CONISTON CORPORATION, et al.,
Plaintiffs–Appellants,
v.
VILLAGE OF HOFFMAN ESTATES, et al., Defendants–Appellees.
No. 87–1890.
United States Court of Appeals,
Seventh Circuit.
Argued Feb. 8, 1988.
Decided April 20, 1988.

Francis X. Grossi, Jr., Katten, Muchin & Zavis, Chicago, Ill., for plaintiffs-appellants.

Richard N. Williams, Hoffman Estates, Ill., David L. Ader, Ancel, Glink, Diamond, Murphy & Cope, Chicago, Ill., for defendants-appellees.

Before POSNER, COFFEY, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

The plaintiffs own a tract of several hundred acres of land, originally undeveloped, in the Village of Hoffman Estates, Illinois. Their complaint, laid under the ubiquitous section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, charges that in turning down the site plan for a 17–acre parcel in the tract, the Village Board of Trustees and its members violated the Constitution and state law. The district court dismissed the complaint for failure to state a claim.

The procedure for land development set forth in the Village's ordinances—ordinances incorporated by reference in an agreement that the Village made with the plaintiffs, annexing their land to the Village—requires first of all that there be a general plan for development approved by the Village Board of Trustees. This condition was met; there is an approved plan for the plaintiffs' tract. The next step is that, as development proceeds, the developer must submit site plans setting forth his plans for developing particular parcels. The site plan is first submitted to the Village Plan Commission for its recommendation and is then forwarded to the Board of Trustees for its approval or disapproval. No criteria are set forth in the ordinances or anywhere else to guide the Board.

Over the years the plaintiffs have presented a number of site plans for parcels within their tract, and these plans have been approved by both the Plan Commission and the Board of Trustees. For the 17–acre parcel at issue in this case, the plaintiffs submitted a plan that envisaged the construction of five single-story commercial buildings with a total office space of 181,000 square feet. The Plan Commission recommended approval of the plan, finding that it conformed to the general plan for the development of the plaintiffs' tract and to all applicable legal regulations. The Board of Trustees, however, disap-

proved the plan. It gave no reasons for its action but one of the trustees indicated that the reason (her reason, at any rate) was that the village has a lot of unused office space. (The Plan Commission had also expressed concern with the amount of vacant office space in the village.) Asked by the plaintiffs to reconsider its decision the Board went into executive session and emerged with an announcement that it was adhering to its original decision. Again there was no statement of reasons.

■ Before we get to the merits of the plaintiffs' appeal we must decide whether we have jurisdiction. The defendants had filed a motion under Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim. The district judge granted the motion and ordered the complaint dismissed, but did not order the entry of a judgment dismissing the lawsuit; no one had asked him to. The dismissal of a complaint is not the dismissal of the lawsuit, see *Bieneman v. City of Chicago*, 838 F.2d 962 (7th Cir.1988) (per curiam); *Benjamin v. United States*, 833 F.2d 669 (7th Cir. 1987) (per curiam), since the plaintiff may be able to amend his complaint to cure whatever deficiencies had caused it to be dismissed. As long as the suit itself remains pending in the district court, there is no final judgment and we have no jurisdiction under 28 U.S.C. § 1291. This is particularly clear in a case such as the present one, where the plaintiff had not amended his complaint before it was dismissed and the defendant had not filed a responsive pleading; for then the plaintiff has a right to amend his complaint without leave of court. Fed.R.Civ.P. 15(a); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1111 (7th Cir.1984).

If, however, it is plain that the complaint will not be amended, perhaps because the grounds of the dismissal make clear that no amendment could cure the defects in the plaintiff's case, the order dismissing the complaint is final in fact and we have jurisdiction despite the absence of a formal judgment under Fed.R.Civ.P. 58. See, e.g., *Akins v. Board of Governors*, 840 F.2d 1371, 1375 n. 2 (7th Cir.1988); *Hickey v.*

*Duffy*, 827 F.2d 234, 238 (7th Cir.1987). That is this case, notwithstanding the district judge's mysterious statement that he was dismissing the complaint "in its present state." The complaint sets forth the plaintiffs' case in full; there appear to be no disputed or unclear facts; and the district judge found that the complaint stated no claim under federal law and he then relinquished his jurisdiction of the pendent state law counts in accordance with the usual rule that pendent claims are dismissed when the federal claims drop out before trial. The plaintiffs have no feasible options in the district court; the case is over for them there. Therefore they can appeal—but it would have been a lot simpler if either the plaintiffs or the defendants had asked the district court to enter a Rule 58 judgment order. We hope that, in the future, parties to litigation in this circuit will do that.

■ The plaintiffs' only federal claims are that they were denied "substantive" and "procedural" due process. They expressly waived any claim they may have had that the defendants, by preventing them from developing the 17–acre parcel in accordance with the site plan, took their property without paying just compensation, in violation of the Fifth and Fourteenth Amendments. In this court they try to withdraw their waiver because of intervening Supreme Court decisions which they argue have broadened the concept of a regulatory taking, but their effort is futile. The taking is complete when it occurs, and the duty to pay just compensation arises then, see, e.g., *First Evangelical Lutheran Church v. County of Los Angeles*, —— U.S. ——, 107 S.Ct. 2378, 2389 n. 10, 96 L.Ed.2d 250 (1987), but the suit for just compensation is not ripe until it is apparent that the state does not intend to pay compensation, *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985); *Unity Ventures v. County of Lake*, 841 F.2d 770, 773–74 (7th Cir.1988). These plaintiffs have not explored the possibility of obtaining compensation for an alleged regulatory taking. In fact, they do

not want compensation; they want their site plan approved.

One might have thought that the takings clause would occupy the field of constitutional remedies for governmental actions that deprive people of their property, and hence that the plaintiffs' waiver of their takings claim would drag their due process claims down with it. But this is not correct; pushed to its logical extreme, the argument would read "property" out of the due process clause of the Fifth and Fourteenth Amendments. Even limited to claims of denial of substantive due process the argument may fail. Rather than being viewed simply as a limitation on governmental power the takings clause could be viewed as the source of a governmental privilege: to take property for public use upon payment of the market value of that property, since "just compensation" has been held to be satisfied by payment of market value, see, e.g., United States v. Reynolds, 397 U.S. 14, 16, 90 S.Ct. 803, 805, 25 L.Ed.2d 12 (1970). Compensation in the constitutional sense is therefore not full compensation, for market value is not the value that every owner of property attaches to his property but merely the value that the marginal owner attaches to his property. Many owners are "intramarginal," meaning that because of relocation costs, sentimental attachments, or the special suitability of the property for their particular (perhaps idiosyncratic) needs, they value their property at more than its market value (i.e., it is not "for sale"). Such owners are hurt when the government. takes their property and gives them just its market value in return. The taking in effect confiscates the additional (call it "personal") value that they obtain from the property, but this limited confiscation is permitted provided the taking is for a public use. It can be argued that if the taking is not for a public use, it is unconstitutional, but perhaps not as a taking; for all the takings clause says is "nor shall private property be taken for public use, without just compensation." This language specifies a consequence if property is taken for a public use but is silent on the consequences if property is taken for a private one. Perhaps the effect of this silence is to dump the case into the due process clause. The taking would then be a deprivation of property without due process of law. The victim could bring suit under section 1983 against the governmental officials who took or are threatening to take his property, seeking an injunction against the taking (or an order to return the property if, it has been taken already—subject to whatever defense the Eleventh Amendment might afford against such a remedy) or full tort damages, not just market value.

There are two objections to this approach. First, the takings clause may be broad enough to take care of the problem without the help of the due process clause. The Supreme Court may believe that the takings clause, of its own force, forbids any governmental taking not for a public use, even if just compensation is tendered. There is language to this effect in a number of opinions, see, e.g., Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 241, 104 S.Ct. 2321, 2329, 81 L.Ed.2d 186 (1984), though it may be inadvertent, and there is language in some cases that looks the other way—or both ways, compare First English Evangelical Lutheran Church v. County of Los Angeles, — U.S. —, 107 S.Ct. 2378, 2385, 96 L.Ed.2d 250 (1987), with id. 107 S.Ct. at 2386 (takings clause requires compensation "in the event of otherwise proper interference amounting to a taking"). In Midkiff the Court cited, as an example of a case where it had "invalidated a compensated taking of property for lack of a justifying public purpose," 467 U.S. at 241, 104 S.Ct. at 2329, a case (Missouri Pac. Ry. v. Nebraska, 164 U.S. 403, 417, 17 S.Ct. 130, 135, 41 L.Ed. 489 (1896)) where in fact the Court, after finding there was no public use, had held that the state had denied the owner due process of law. In other words, once the privilege created by the takings clause was stripped away, the state was exposed as having taken a person's property without due process of law. But this was before the takings clause had been held applicable to the states (via the due process clause of the Fourteenth Amendment) in Chicago, Burlington &

*Quincy R.R. v. City of Chicago*, 166 U.S. 226, 236, 17 S.Ct. 581, 584, 41 L.Ed. 979 (1897)—though only a year before.

It seems odd that the takings clause would require just compensation when property was taken for a public use yet grant no remedy when the property was taken for a private use, although the semantics of the clause are consistent with such an interpretation, as we have seen. Yet well after the takings clause was deemed absorbed into the due process clause of the Fourteenth Amendment, the Supreme Court reviewed a zoning ordinance for conformity to substantive due process. See *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). Justice Stevens has said that the Court in *Euclid* "fused the two express constitutional restrictions on any state interference with private property—that property shall not be taken without due process nor for a public purpose without just compensation—into a single standard." *Moore v. City of East Cleveland*, 431 U.S. 494, 514, 97 S.Ct. 1932, 1943, 52 L.Ed.2d 531 (1977) (concurring opinion).

The other objection to the due process route in a case such as the present one is that it depends on the idea of "substantive" due process. This is the idea that depriving a person of life, liberty, or property can violate the due process clause of the Fifth and Fourteenth Amendments even if there are no procedural irregularities—even if, for example, the state after due deliberation has passed a statute establishing procedures for taking private homes and giving them to major campaign contributors or people with red hair, and in taking the plaintiff's home has complied scrupulously with the statute's procedural requirements.

Substantive due process is a tenacious but embattled concept. Text and history, at least ancient history, are against it, though perhaps not decisively. (See generally Jurow, *Untimely Thoughts: A Reconsideration of the Origins of Due Process of Law*, 19 Am.J. Legal Hist. 265 (1975).) A provision which states that life, liberty, or property may not be taken without due process of law implies that life, liberty, or

property *can* be taken with due process of law, and hence that the only limitations are procedural ones. The term "due process of law" has been traced back to a fourteenth-century English statute, in which the term plainly referred to procedure rather than substance. See 28 Edw. III, ch. 3 (1354) ("no man ... shall be put out of land ..., nor taken, nor imprisoned, nor disinherited, nor put to death, without being brought into answer by due process of law"). In the seventeenth century Sir Edward Coke confused the picture by equating the term to Magna Carta's much vaguer expression "by the law of the land." The Supreme Court adopted Coke's approach in *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 276, 15 L.Ed. 372 (1856), pointing out that the Northwest Ordinance and several state constitutions had used the Magna Carta language and implying that the terminology was interchangeable in the Fifth Amendment as well. Even so, the term "law of the land" is scarcely pellucid. Further complications are injected by the much debated legislative history of the Fourteenth Amendment.

The strongest criticisms of substantive due process are institutional ones. The concept invests judges with an uncanalized discretion to invalidate federal and state legislation. See *Illinois Psychological Ass'n v. Falk*, 818 F.2d 1337, 1342 (7th Cir.1987); *Gumz v. Morrissette*, 772 F.2d 1395, 1404–08 (7th Cir.1985) (concurring opinion), overruled (on the grounds urged in the concurrence) in *Lester v. City of Chicago*, 830 F.2d 706 (7th Cir.1987); *Chicago Board of Realtors, Inc. v. City of Chicago*, 819 F.2d 732, 744–45 (7th Cir. 1987) (separate majority opinion). It also and by the same token invites the federal courts to sit in judgment on almost all state action—including, to come back to the present case, all zoning decisions. For it is tempting to view every zoning decision that is adverse to the landowner and in violation of state law as a deprivation of property. Property is not a thing, but a bundle of rights, and if the state confers rights with one hand and takes them away with the other, by a zoning decision that by violat-

ing state law deprives the owner of a property right and not just a property interest (the owner's financial interest in being able to employ his land in its most valuable use), why is it not guilty of denying substantive due process?

No one thinks substantive due process should be interpreted so broadly as to protect landowners against erroneous zoning decisions. But it is difficult to come up with limiting concepts that are not completely ad hoc. Justice Stevens tried—though in the context of judicial review of an ordinance, rather than of an individual decision applying an ordinance—in his concurring opinion in *Moore v. City of East Cleveland, supra,* 431 U.S. at 520, 97 S.Ct. at 1946, where he suggested that an ordinance that is not "shown to have any 'substantial relation to the public health, safety, morals or general welfare'" and that "cuts deeply into a fundamental right associated with the ownership of residential property" violates the Constitution.

The present case is so remote from a plausible violation of substantive due process that we need not decide whether, or to precisely what extent, the concept limits takings by state and local governments; or whether the takings clause does so; or whether both or neither do so and if both whether there is any practical difference except possibly in a case like this where the plaintiff waives any claim based on the takings clause; or, finally, whether the plaintiffs can force us to confront difficult questions of substantive due process by their decision to waive a seemingly more straightforward claim under the takings clause. The Village of Hoffman Estates did not *take* the plaintiffs' land (or in the language of the due process clause, deprive them of the land) for a *private* (hence presumptively unreasonable) purpose, so even if we assume that if both conditions were fulfilled the taking or deprivation would violate the due process clause, the plaintiffs cannot prevail.

 As to whether there was a deprivation: Granted, the rejection of the plaintiffs' site plan probably reduced the value of their land. The plan must have repre-

sented their best guess about how to maximize the value of the property, and almost certainly a better guess than governmental officials would make even if the officials were trying to maximize that value, which of course they were not. But the plaintiffs do not even argue that the rejection of the site plan reduced the value of their parcel much, let alone that the parcel will be worthless unless it can be used to create 181,000 square feet of office space. A taking is actionable under the takings clause even if it is of just a sliver of the owner's property (e.g., a one-foot strip at the back of a 100–acre estate), see *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), and we can assume that the same thing is true under the due process clause. But in cases under the takings clause the courts distinguish between taking away all of the owner's rights to a small part of his land and taking away (through regulation) a few of his rights to all of his land, and grant much broader protection in the first case. With *Loretto* compare *City of Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 674 and n. 8, 96 S.Ct. 2358, 2362 and n. 8, 49 L.Ed.2d 132 (1976); *Barbian v. Panagis,* 694 F.2d 476, 483–85 (7th Cir. 1982), and cases cited there. The plaintiffs in this case have been deprived of their "right" to create 181,000 square feet of office space on a 17–acre parcel of a much larger tract, and that deprivation is a limited, perhaps minimal, incursion into their property rights. If so it is not a deprivation at all, in the constitutional sense, and the due process clause is not in play. See *Wells Fargo Armored Service Corp. v. Georgia Public Service Comm'n,* 547 F.2d 938, 941 (5th Cir.1977); cf. *Brown v. Brienen,* 722 F.2d 360, 364 (7th Cir.1983) (dictum); *York v. City of Cedartown,* 648 F.2d 231 (5th Cir.1981) (per curiam).

Considering now the grounds as distinct from the consequences of the defendants' action, it may seem that since the Board of Trustees gave no reason for rejecting the plan we cannot exclude the possibility that the motive for the rejection was private, so that if (but it is a big if, as we have just seen) the rejection amounted to a taking or

deprivation of property the plaintiffs' constitutional rights may have been violated. And even if, as seems plausible, the reason given by one trustee was *the* ground for the Board's rejection of the site plan, this reason seems to amount to nothing more than a desire to protect existing owners of office buildings from new competition, and thus makes the rejection look like an effort to transfer wealth from the plaintiffs to the existing owners. But as emphasized in our opinion in the *Chicago Board of Realtors* case, much governmental action is protectionist or anticompetitive, see 819 F.2d at 742, 745; and nothing is more common in zoning disputes than selfish opposition to zoning changes. The Constitution does not forbid government to yield to such opposition; it does not outlaw the characteristic operations of democratic (perhaps of any) government, operations which are permeated by pressure from special interests. *Rogin v. Bensalem Township*, 616 F.2d 680, 687–88 (3d Cir.1980). There is no suggestion that the defendants acted out of some partisan political motive that might raise questions under the First Amendment or, one of our sister courts has suggested recently, under some notion of substantive due process, see *Bello v. Walker*, 840 F.2d 1124, 1129 (3d Cir.1988).

This case presents a garden-variety zoning dispute dressed up in the trappings of constitutional law—a sure sign of masquerade being that the plaintiffs do not challenge the constitutionality of the zoning ordinances of the Village of Hoffman Estates but argue rather than the Board of Trustees had no authority under those ordinances to reject their site plan once the Village Plan Commission had approved it. If the plaintiffs can get us to review the merits of the Board of Trustees' decision under state law, we cannot imagine what zoning dispute could not be shoehorned into federal court in this way, there to displace or postpone consideration of some worthier object of federal judicial solicitude. Something more is necessary than dissatisfaction with the rejection of a site plan to turn a zoning case into a federal case; and it should go without saying that

the something more cannot be merely a violation of state (or local) law. A violation of state law is not a denial of due process of law. See, e.g., *Hebert v. Louisiana*, 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926); *Kompare v. Stein*, 801 F.2d 883, 888 (7th Cir.1986); *Kasper v. Board of Election Comm'rs*, 814 F.2d 332, 342 (7th Cir.1987).

Thus we agree with the First Circuit's decision in *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir.1982), that the fact "that town officials are motivated by parochial views of local interests which work against plaintiffs' plan and which may contravene state subdivision laws" (or, we add, local ordinances) does not state a claim of denial of substantive due process. We cited *Estabrook* with approval in *Burrell v. City of Kankakee*, 815 F.2d 1127, 1129 (7th Cir.1987). It is true that there we interpreted *Estabrook* to mean that "in order to prevail on a substantive due process claim, plaintiffs must allege and prove that the denial of their proposal is arbitrary and unreasonable bearing no substantial relationship to the public health, safety or welfare," *id.* This formulation, borrowed from *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926), which dealt with the validity of zoning ordinances, not of individual zoning decisions where arguably the standard of federal judicial review should be narrower, is broadly worded indeed; but the only example we gave of a zoning decision that might flunk the test was one based on race or color, see 815 F.2d at 1129. Of course if a zoning decision is based on considerations that violate specific constitutional guarantees, it is invalid; but in all other cases the decision can be said to deny substantive due process only if it is irrational. See *Shelton v. City of College Station*, 780 F.2d 475, 479–83 (5th Cir.1986); *Pace Resources, Inc. v. Shrewsbury Township*, 808 F.2d 1023, 1034–35 (3d Cir.1987). Thus, by "arbitrary and unreasonable" in *Burrell* we meant invidious or irrational. See also *Unity Ventures v. County of Lake, supra*, 841 F.2d at 775 n. 2. The same test would be

appropriate if the zoning decision were challenged under the equal protection clause of the Fourteenth Amendment, rather than under the due process clause of the Fifth or Fourteenth Amendments. See *id.; Parks v. Watson,* 716 F.2d 646, 654 (9th Cir.1983) (per curiam).

At worst, the decision here was mistaken and protectionist; it was not irrational, so the claim of a denial of substantive due process fails. But were the plaintiffs denied procedural due process? As often, the line between "procedure" and "substance" is hazy in the setting of the regulation of land uses. The denial of the plaintiffs' site plan without a full statement of reasons is what gives the denial such arbitrary cast as it may have, and thus lends color to the claim of irrationality, which is the substantive due process claim; but the failure to give reasons is also the cornerstone of the procedural due process claim. It is no good saying that if a person is deprived of property for a bad reason it violates substantive due process and if for no reason it violates procedural due process. Unless the bad reason is invidious or irrational, the deprivation is constitutional; and the no-reason case will sometimes be a case of invidious or irrational deprivation, too, depending on the motives and consequences of the challenged action.

The plaintiffs complain not only about the absence of a statement of reasons but also about the Board of Trustees' action in going into executive session and about the absence of any language in the Village's ordinances to indicate that the Board of Trustees is authorized to reject a site plan recommended by the Plan Commission. These complaints might have considerable force if the zoning decision had been adjudicative in nature, but it was not. The very absence of criteria, coupled with the fact that the Village Board of Trustees is the governing body of the Village of Hoffman, suggests that, as is usually true of zoning, the Board's decision to approve or disapprove a site plan is a legislative rather than adjudicative decision. The difference is critical. See *Bi–Metallic Investment Co. v. State Board of Equalization,* 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915); *City of Eastlake v. Forest City Enterprises, Inc., supra,* 426 U.S. at 675 n. 10, 96 S.Ct. at 2363 n. 10; *Griffin High School v. Illinois High School Ass'n,* 822 F.2d 671, 676 (7th Cir.1987); *Philly's v. Byrne,* 732 F.2d 87, 92 (7th Cir.1984). The Constitution does not require legislatures to use adjudicative-type procedures, to give reasons for their enactments, or to act "reasonably" in the sense in which courts are required to do; as already noted, legislatures can base their actions on considerations—such as the desire of a special-interest group for redistributive legislation in its favor—that would be thought improper in judicial decision-making. It is odd, though, that the plaintiffs should complain about the action of the Board of Trustees in considering their request for reconsideration in executive session; judicial deliberations are typically more private than legislative ones.

■■■ It is not labels that determine whether action is legislative or adjudicative. A legislature is not allowed to circumvent the due process clause by the facile expedient of announcing that the state's courts and administrative agencies are henceforth to be deemed legislative bodies even though nothing in their powers and procedures has changed. But neither is the legislature required to judicialize zoning, and perhaps it would not be well advised to do so. The decision whether and what kind of land uses to permit does not have the form of a judicial decision. The potential criteria and considerations are too open-ended and ill-defined. Granted, much modern adjudication has this character, but the difference is that even modern courts hesitate to treat the decision-making process as a wide-open search for the result that is just in light of all possible considerations of distributive and corrective justice, while legislatures are free to range widely over ethical and political considerations in deciding what regulations to impose on society. The decision to make a judgment legislative is perforce a decision not to use judicial procedures, since they are geared to the making of more circumscribed, more "reasoned" judgments. Moreover, if a state legisla-

ture wishes to reserve to itself the type of decision that in other systems might be given to the executive or judicial branches, it can do so without violating the federal Constitution, which does not require a specific separation and allocation of powers within state government. See *Highland Farms Dairy, Inc. v. Agnew*, 300 U.S. 608, 612, 57 S.Ct. 549, 551, 81 L.Ed. 835 (1937); *United Beverage Co. v. Indiana Alcoholic Beverage Comm'n*, 760 F.2d 155 (7th Cir. 1985). It has been argued that the need for separation of powers is even greater at the state than the national level, because a smaller polity is more susceptible to the pressure of factions than a large one. See Comment, *The Guarantee of Republican Government: Proposals for Judicial Review*, 54 U.Chi.L.Rev. 208, 234–35 (1987). The counterargument is that there is more intergovernmental competition the lower the level of government. The debate is foreclosed at our level of the judiciary by higher authority.

The Board of Trustees is the Village's legislature, *LaSalle National Bank v. Village of Bloomingdale*, 154 Ill.App.3d 918, 928–29, 107 Ill.Dec. 604, 611, 507 N.E.2d 517, 524 (1987), and it has reserved to itself the final decision in zoning matters. Naturally it has not sought to tie its hands with criteria for approval of site plans or with a requirement that it give reasons for its action and always act in a fishbowl. The check on its behavior is purely electoral, but, as the Supreme Court stated in the *City of Eastlake* case, in a democratic polity this method of checking official action cannot be dismissed as inadequate per se. See also *Bi–Metallic Investment Co. v. State Board of Equalization, supra*, 239 U.S. at 445, 36 S.Ct. at 142; *Philly's v. Byrne, supra*, 732 F.2d at 91–93.

A reason stressed in *Philly's* why legislatures are not required to follow trial-type procedures is the across-the-board character of legislation. See *id.* at 92. A statute, unlike a judicial decision, applies directly to a whole class of people, and it is this attribute that makes democractic checking feasible, though it is far from perfect. The smaller the class affected by a nominally legislative act, the weaker the democratic check; in the limit, where the class has only one member, we have the bill of attainder, which Congress and state legislatures are forbidden to enact. See U.S. Const., art. I, §§ 9, 10; *Philly's v. Byrne, supra*, 732 F.2d at 93. The class here is small. This might support an argument that some type of individualized hearing was required. See *Londoner v. City & County of Denver*, 210 U.S. 373, 385–86, 28 S.Ct. 708, 713–14, 52 L.Ed. 1103 (1908). *City of Eastlake*, upholding the decision to submit a single landowner's zoning application to a referendum, cuts the other way. In any event, there was a hearing here—maybe not enough of one to satisfy the requirements of due process in an adjudicative setting but enough to give the plaintiffs all the process that due process in zoning could possibly be thought to require after *City of Eastlake*.

■ One point remains to be noted briefly. The district court dismissed a pendent state law claim that sought a mandamus directing the defendants to approve the plaintiffs' site plan. The ground for the dismissal was, as we noted, the fact that the federal claims were being dismissed before trial. That is fine, but we think it useful to add for future reference that the court had in any event no jurisdiction to issue a mandamus against state officials for violating their duties under state law. The interference with the operation of state government from such a mandamus would be disproportionate to the need, which can be satisfied perfectly well (if perhaps with some loss of convenience) by proceeding in state court. The interference would be even greater than that caused by the usual injunction—and the Supreme Court has held that the federal courts' pendent jurisdiction may not be used as a basis for enjoining state officials from violating state law. See *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106, 120–21, 104 S.Ct. 900, 918–19, 79 L.Ed.2d 67 (1984).

Affirmed.