### KERR–McGEE CHEMICAL CORPORATION,
### Plaintiff,

### v.

**Jim EDGAR, in his official capacity as Governor of the State of Illinois; Roland Burris, in his official capacity as Attorney General for the State of Illinois; and Tom Ortciger, in his official capacity as Director of the Illinois Department of Nuclear Safety, Defendants.**

**The City of West Chicago, Intervenor–Defendant.**

**No. 93 C 0948.**

United States District Court, Northern District of Illinois, E.D.

Nov. 10, 1993.

John L. Rogers, David Barry Goroff, Hopkins & Sutter, P.C., Chicago, IL, Richard A. Meserve, Peter J. Nickles, Elliott Schulder, Caroline M. Brown, Covington & Burling, Washington, DC, for plaintiff.

Douglas J. Rathe, William David Seith, Francis Xavier Lyons, Illinois Atty. General's Office, Chicago, IL, for defendants.

Joseph Vincent Karaganis, John William Kalich, Karaganis & White, Ltd., Chicago, IL, for The City of West Chicago.

## MEMORANDUM OPINION
## AND ORDER

ALESIA, District Judge.

Defendants Jim Edgar, in his official capacity as Governor of the State of Illinois; Roland Burris, in his official capacity as Attorney General for the State of Illinois; and Thomas Ortciger, in his official capacity as Director of the Illinois Department of Nuclear Safety have moved to dismiss plaintiff Kerr–McGee Chemical Corporation's five-count complaint on two broad grounds.[1] First, defendants argue that the complaint should be dismissed for lack of jurisdiction, FED.R.CIV.P. 12(b)(1); specifically, defendants assert the claims are not ripe, and therefore there is no case or controversy over which the court would have jurisdiction,

U.S. CONST. art. III, § 1, cl. 1.[2] Second, defendants argue that the complaint should be dismissed for failure to state a claim upon which relief can be granted, FED.R.CIV.P. 12(b)(6), asserting various arguments targeted at the respective five counts of the complaint.

## BACKGROUND

This case involves a storied and stormy battle over a mound of nuclear by-product material at the West Chicago Rare Earths Facility, in West Chicago, Illinois.[3] The mound contains a substantial quantity of thorium filings, residue produced during the processing of thorium ores, from when such milling went on at the site. The milling has long since stopped, and Kerr–McGee, the current owner of the site, has contracted to move the by-product material to a permanent disposal site in Utah. The Utah site awaits licensing by the United States Environmental Protection Agency.

In 1992 Illinois enacted the Uranium and Thorium Mill Tailings Control Act, P.A. 87–1024 (codified at 420 ILCS 42/1 through 42/49). The Act regulates storage of uranium and thorium mill tailings in a number of ways. First, the Act imposes storage fees of $2 per square foot on stored by-product material. These fees are to be placed in a "By-product Material Safety Fund," which is to be expended for state clean-up costs as well as reimbursement for private clean-up costs. 420 ILCS 42/15. The Act also provides that the owner or operator of a storage facility must file a "detailed plan" for "permanent remedial action" with the Illinois Department of Nuclear Safety as well as nearby munici-

---

1. The City of West Chicago has been granted leave to intervene as a defendant in this case. Intervenor-defendant has filed a brief supporting the arguments of defendants.

2. Intervenor-defendant City of West Chicago has argued that the Tax Injunction Act, 28 U.S.C. § 1341, summarily strips the court of subject matter jurisdiction. While a fee can be covered by the Tax Injunction Act, here the court is constrained by the Seventh Circuit's holding in *Government Suppliers Consolidating Servs., Inc. v. Bayh,* 975 F.2d 1267, 1271 nn. 2, 3 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993), and must conclude that the annual fee requirement is not a tax for

purposes of the Tax Injunction Act. Like the Indiana waste disposal fees in *Government Suppliers,* the Act's fee provision is more part of a regulatory structure than a revenue-raising scheme. As in *Government Suppliers,* the statute at issue here is not designed to contribute revenue into the state's general fund, instead earmarking funds for purposes consistent with the overall regulatory scheme. *See id.;* 420 ILCS 42/15.

3. This factual background is drawn from the complaint and exhibits incorporated to the complaint.

pal bodies in certain circumstances, within one year of the effective date of the Act (September 6, 1992). 420 ILCS 42/25. Furthermore, the Act contains a "local approval" provision, placing restrictions on operating a by-product disposal facility or placing by-product material without approval of nearby municipalities or counties. 420 ILCS 42/20. Failure to comply with the Act subjects a violator to severe civil penalties. 420 ILCS 42/40.

Section 35 of the Act has an escape clause for owners of by-product material. That section provides that "[i]f the Director of Nuclear Safety certifies to the General Assembly that the State and the owner or operator of a licensed by-product material storage or disposal facility have entered into an agreement enforceable in court that accomplishes the purposes of subsection (b) of Section 5 of this Act [legislative purposes section], and that also provides financial assurances to protect the State against costs [of clean-up] described in parts (1), (2), and (3) of subsection (b) of Section 15, then Sections 15 [storage fees], 25 [response plans] and 40(b) [civil penalties for failure to pay fees] of this Act, and any rules the [Illinois] Department [of Nuclear Safety] may adopt to implement those Sections, shall not apply to that owner or operator." 420 ILCS 42/35.

Kerr–McGee filed suit for declaratory and injunctive relief, alleging that the Act violates the United States Constitution. While this is by no means round one of Kerr–McGee and the State of Illinois' legal battles, *see, e.g., Illinois v. Kerr–McGee Chemical Corp.,* 677 F.2d 571 (7th Cir.), *cert. denied,* 459 U.S. 1049, 103 S.Ct. 469, 74 L.Ed.2d 618 (1982) and *Kerr–McGee Chemical Corp. v. City of West Chicago,* 914 F.2d 820 (7th Cir.1990), it is to the court's knowledge the first time the Uranium and Thorium Mill Tailings Control Act has been challenged on its constitutionality.

Count I of Kerr–McGee's complaint alleges that the Act is preempted by federal law. Count II alleges that the Act violates the commerce clause. Count III alleges that the Act is a bill of attainder. Count IV alleges that the Act is a taking without just compen-sation. Count V alleges a violation of the fourteenth amendment's due process clause.

## COUNT I: PREEMPTION

Defendants challenge Count I first on the basis that it does not state a ripe claim. Therefore, defendants argue, no Article III case or controversy exists, stripping this court of jurisdiction.

■ The Supreme Court has long instructed that "the question of ripeness turns on [1] 'the fitness of the issues for judicial decision' and [2] 'the hardship to the parties of withholding court consideration.'" *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983) (quoting *Abbott Lab. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)). The Court has also made clear that the mere fact that a statute's effective or operative date is in the future does not leave a challenge to that statute per se unripe. Where interference with planning or other hardships may be worked by an impending statutory provision, courts may consider a challenge ready for review. *See New York v. United States,* —— U.S. ——, ——, 112 S.Ct. 2408, 2428, 120 L.Ed.2d 120 (1992); *Pacific Gas & Electric Co.,* 461 U.S. at 201, 103 S.Ct. at 1721; *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 144–45, 95 S.Ct. 335, 359, 42 L.Ed.2d 320 (1974). That rule is important here because the aspect of the act primarily complained of by Kerr–McGee— the fee provision of section 15, 420 ILCS 42/15—will not create a duty to pay any fees until March 1994, and no fees will accrue until January 1994.

■ A state statute may be preempted by federal law under two circumstances. The first circumstance, sometimes referred to as field preemption, is where Congress either expressly or impliedly has preempted states from regulating whatsoever in a field of law. The second circumstance of preemption occurs where a state law specifically conflicts with federal law. *E.g., Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982).

In Count I plaintiff specifically alleges that the Act is preempted by the Atomic Energy Act ("AEA"), 42 U.S.C. § 2011 *et seq.*, and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* Plaintiffs' claims of preemption appear to be rooted in alleged specific conflicts with federal law.

■ Plaintiff's claim of preemption by the AEA is the following: "Contrary to the AEA requirement that a state's regulation of by-product material must be at least as protective of public health, safety and the environment as federal standards, the Act is designed to force Kerr–McGee to move the West Chicago byproduct material out of state regardless of the consequences to the public health, safety and the environment." (Complaint ¶ 48).

While briefing on the preemption issue has focused on the question of which party is relying more on conjecture than the other, one thing remains clear: the federal regulatory outlook is anything but certain. The United States Environmental Protection Agency is expected to license a facility in Utah for the disposal of the by-product material at issue in this case, as explained to the court by both parties in recent briefs. With a development as crucial as this in flux, the court must hold the claim not ready for review. Otherwise, the court would be issuing a classic advisory opinion. If developments warrant, the court will entertain an amended complaint.

■ The claim that CERCLA preempts the Act similarly does not survive this motion. Plaintiff's CERCLA preemption claim is that "[c]ontrary to the requirements of CERCLA, the Act will impose a penalty on Kerr–McGee for complying with the EPA's directive that Kerr–McGee transfer byproduct material from the NPL [National Priorities List] sites to the West Chicago facility. In addition, the Act conflicts with CERCLA because it is intended to coerce Kerr–McGee to move byproduct material from the West Chicago NPL sites out of Illinois without regard to any final remedial action plans that may be adopted by the EPA pursuant to CERCLA and without regard to the concerns for the public health, safety and the environment embodied in CERCLA." (Complaint ¶ 49).

This is an allegation of preemption by specific contradiction, but it is again an allegation that is not ripe. The complaint itself concedes that the specific federal directive that Kerr–McGee points to as preempting the Act, an EPA directive that Kerr–McGee transfer by-product material from NPL sites to the West Chicago facility, is not yet law. The allegation is therefore based on speculation, and would have the court rule in the abstract.

Accordingly, Count I is dismissed based upon Rule 12(b)(1) for lack of jurisdiction, and issues raised as to failure to state a claim, Rule 12(b)(6), need not be addressed.

## COUNT II: COMMERCE CLAUSE

### *Ripeness*

■ The commerce clause claim appears ripe for review. The hardship to the parties factor weighs in favor of review now rather than later. Kerr–McGee alleges important decision making depends upon disposition of the case. Where Kerr–McGee has alleged claims capable of immediate consideration, it ought to be able to make those decisions with some insight into the constitutionality of the statute. *Abbott Lab. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

Furthermore, the commerce clause claim appears fit for review. The passage of time and the development of facts here adds little to the analysis. The factors in a commerce clause analysis, more fully explained below, require the court to examine the effect of the Act on interstate commerce and the Act's furtherance of legitimate state interests. These sorts of determinations are not dependant upon a more complete factual record.

Accordingly, the court considers the commerce claim ripe for review.

### *Failure to State a Claim*

■ Defendants also challenge Count II under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon

which relief can be granted. In evaluating such a basis for dismissal, the court examines the face of the complaint against the applicable law, and the allegations of the complaint are taken as true for purposes of the motion. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). The court is allowed to take into consideration documents incorporated by reference to the complaint as exhibits. *United States v. Wood,* 925 F.2d 1580, 1581–82 (7th Cir.1991) (citing *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985) (pleading is deemed to include any document attached as an exhibit)). The motion will not be granted unless under no circumstances may the complaint state a claim. *See Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ Count II alleges that the Act violates the negative or dormant commerce clause of Article I of the United States Constitution. *See Cooley v. Board of Wardens,* 12 How. 299, 53 U.S. 299, 13 L.Ed. 996 (1851). Specifically, Count II alleges that "[b]y imposing restrictions on the storage and disposal of byproduct material in Illinois, the Act erects an impermissible barrier against the movement of such material in interstate commerce, in violation of the commerce clause." (Complaint ¶ 53).

Defendants' memorandum in support of their motion to dismiss asserts that the Act is a non-discriminatory, even-handed statute. "[N]othing in the Act forces Kerr–McGee or any other entity to move byproduct material out of state, nor does it prevent the movement of byproduct material into the state. Furthermore, the Act does not prevent Kerr–McGee or any other entity from opening a duly licensed permanent disposal site for such byproduct material within the state." (Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss

at 9.) It is true the Act is not a protectionist statute in the most direct sense. The Act does not prescribe that by-product material be exported out of state or proscribe the importation of by-product material.

■ However, the fact that the Act is not so facially discriminatory against shipments across Illinois' state line does not end the discussion, especially at the stage of this very preliminary motion that relies upon the complaint alone. It is true that "a statute 'which clearly discriminates against interstate commerce is unconstitutional "unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." '" *Government Suppliers Consolidating Servs., Inc. v. Bayh,* 975 F.2d 1267, 1277 (7th Cir.1992) (quoting *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources,* —— U.S. ——, ——, 112 S.Ct. 2019, 2023–24, 119 L.Ed.2d 139 (1992) (citation omitted)), *cert. denied,* —— U.S. ——, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993). Plaintiff has by omission conceded that the Act is not an instance of facial discrimination. However, heightened scrutiny could still be applied if the statute discriminates "in practical effect" against interstate commerce. *Id.* 975 F.2d at 1278. Such evaluation of the practical effect of the entire statute may consider the effect of provisions other than the fee provision, especially the local approval provision of section 20, 420 ILCS 42/20.[4]

■ Furthermore, if the statute avoids strict scrutiny by being neither facially discriminatory nor discriminatory in practical effect, there is yet more work to do. Absence of such clear discrimination does not automatically save a statute from the operation of the dormant commerce clause. There is a second test: "[I]f a statute is neutral on its face, has only indirect or incidental effects on interstate commerce, and regulates even-handedly, the statute will be upheld 'unless the burden imposed on such commerce is

4. The local approval provision of the Act was not emphasized by the parties in briefs, but may be important in further proceedings on the issue of how the Act's operation in total affects interstate commerce. Defendants have argued that the Act does not burden interstate commerce because by-product material could be moved in-state. The court wonders whether, given section 20 of the

Act, that is true as a practical matter, and, as a legal matter, what importance is the distinction between a complete bar on disposal in-state and a delegation to local municipalities and counties of the power to bar disposal. On this motion to dismiss it would not be necessary, proper or possible to fully resolve these issues.

934

clearly excessive in relation to the putative local benefits.'" *Government Suppliers,* 975 F.2d at 1278 (quoting *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970)). Under this second *Pike* test, if a legitimate local purpose is "'credibly advanced,' 'then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Id.* (citations omitted).

Therefore, the record before the court at this stage will not support a quick—*i.e.* Rule 12(b)(6)—determination of the level of scrutiny or the application of that scrutiny to the commerce clause count. Accordingly, as to Count II, defendants' motion to dismiss based upon failure to state a claim under Rule 12(b)(6) is denied.[5]

5. The court recognizes the Supreme Court has granted *certiorari* on a case, the resolution of which may impact on the commerce clause analysis here. *See C & A Carbone, Inc. v. Town of Clarkstown,* ——— U.S. ———, 113 S.Ct. 2411, 124 L.Ed.2d 635 (1993); 61 U.S.L.W. 3783 (May 25, 1993). The question presented for review there is: "Does local law requiring disposal of all trash, regardless of origin, at designated local facility, and prohibiting export of such trash out of state, constitute burden on and discrimination against interstate commerce in violation of the commerce clause." 61 U.S.L.W. 3783. This is not the precise question that is before this court, but it would not be surprising if en route to resolution of *C & A Carbone* the Supreme Court commented on dormant commerce clause analysis in a way that impacted this case. For now, of course, the court applies the law as it stands.

6. The United States Constitution actually has two bill of attainder clauses, one proscribing the federal government from passing a bill of attainder, U.S. CONST. art. I, § 9, cl. 3 ("No Bill of Attainder ... shall be passed."), and the other proscribing states from passing a bill of attainder, U.S. CONST. art. 1, § 10, cl. 1 ("No State shall ... pass any Bill of Attainder....").

In analyzing a bill alleged to be an attainder the relevant precedents on each of the two clauses generally may be used interchangeably. This is so most obviously because the clauses are nearly identical, suggesting they are aimed at the same sort of legislative vice. Furthermore, both clauses can be traced to the same historical distrust of such legislation. *E.g.,* THE FEDERALIST No. 44, at 282 (James Madison) (Clinton Rossiter ed. 1961) ("Bills of attainder ... are contrary to the first principles of the social com-

## COUNT III: BILL OF ATTAINDER

### *Ripeness*

■ The United States Constitution prohibits state governments from enacting a bill of attainder. U.S. CONST. art. I, § 10, cl. 1. A bill of attainder is "'a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.'" *Selective Serv. Sys. v. Minnesota Public Interest Research Group,* 468 U.S. 841, 846–47, 104 S.Ct. 3348, 3352, 82 L.Ed.2d 632 (1984) (quoting *Nixon v. Administrator of General Servs.,* 433 U.S. 425, 468, 97 S.Ct. 2777, 2803, 53 L.Ed.2d 867 (1977)).[6]

■ The bill of attainder claim is ripe for review under the two-part *Abbott Laboratories* test.[7] The issue of whether the Act is

pact and to every principle of sound legislation.").

Of course, the analysis of the legislation may be affected by whether the law is state or federal. For example, one of the inputs to the bill of attainder analysis is whether there is a legitimate, non-punitive purpose to the act. The legitimate purposes of state and federal legislation, though overlapping, are hardly identical, so it might matter whether the legislation were state or federal in determining if it is a bill of attainder.

The mere point the court wishes to make is that, in ruling on this motion as to the bill of attainder count, cases analyzing the federal bill of attainder clause are relied upon without further comment, unless the fact that the legislation at issue is state legislation is somehow relevant to the analysis.

7. Plaintiff has attempted to confine defendants' ripeness challenge to the first two counts of the complaint, for "Preemption" and "Commerce Clause." The court, however, will evaluate all five counts on ripeness grounds.

While it is true that defendants' motion to dismiss is not a model of clarity on this point, the court reads the ripeness attack as going to all five counts. Defendants' motion itself and supporting memorandum allege lack of ripeness generally (Motion to Dismiss at 2; Defendants' Memorandum in Support of Defendants' Motion to Dismiss at 2), and, when plaintiff raised the issue in reply (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 2), defendants responded that they were challenging the ripeness of all five counts (Defendants' Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss at 2; *see*

an unconstitutional bill of attainder is ready for judicial review. The resolution of the claim relies primarily on legal analysis, with the facts necessary to adjudication few and easily recognizable. Furthermore, the passage of time does not present a significantly more concrete set of facts with which to analyze the bill of attainder issue. To an extent, either the Act is a bill of attainder or it is not. It will be no more nor no less of a bill of attainder come 1994. Furthermore, plaintiff is alleging a *present* effect of the statute, coercion into a consent decree, which would occur before the effective date of the Act.

Likewise, as discussed regarding Count II, there is enough hardship on the plaintiff alleged to warrant instant review, given the fact that the issues are factually ready for review.

The court therefore finds Count III ripe.

### *Failure to State a Claim*

Plaintiff bears a heavy burden in seeking to have the Act declared an unconstitutional bill of attainder, as " 'only clearest proof suffices to establish unconstitutionality of a statute' " as a bill of attainder. *Communist Party of the United States v. Subversive Activities Control Bd.*, 367 U.S. 1, 83, 81 S.Ct. 1357, 1403, 6 L.Ed.2d 625 (1961) (citation omitted).

■ As a threshold matter, a bill of attainder must " '*specifically* designate[ ] persons or groups' " for punishment. *Selective Serv. Sys.*, 468 U.S. at 847, 104 S.Ct. at 3352 (emphasis added & citation omitted). No longer must the bill specifically name an individual in order to be an attainder, as had historically been the case. Under more modern interpretations of the concept, "[t]he singling out of an individual for legislatively prescribed punishment constitutes an attainder whether the individual is called by name or described in terms of conduct which, be-

cause it is past conduct, operates only as a designation of particular persons." *Communist Party*, 367 U.S. at 86, 81 S.Ct. at 1405. Here, however, the Act has not been drafted with such specificity.

■ Kerr–McGee's position as to the specificity of the Act is based on two contentions: first, the Act in operation only applies to Kerr–McGee; and, second, the intent of the Act was to coerce Kerr–McGee into a consent decree in which it would agree to move the thorium filings at its cost. Neither of these grounds creates the specificity contemplated by the bill of attainder clause.

*Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), affirming a dismissal of a bill of attainder claim, is the most instructive case on the issue of specificity. There, the Supreme Court determined that the Presidential Recordings and Materials Preservation Act, although referring to President Richard Nixon *by name*, was not an attainder upon the president. The statute at issue in *Nixon*—put simply—preserved President Nixon's records. Title I of the Act dealt exclusively with President Nixon's papers. This specificity, the Court accepted, "is easily explained by the fact that at the time of the Act's passage, only his materials demanded immediate attention." *Nixon*, 433 U.S. at 472, 97 S.Ct. at 2805. The Illinois Act thus could have been less subtle—*i.e.*, named Kerr–McGee—and still arguably survived the bill of attainder clause. The logic of *Nixon* therefore turns Kerr–McGee's showcase argument on itself: rather than being the basis for declaring a bill of attainder, the allegation that Kerr–McGee owns the only site to which the Act applies would be a reason to declare Kerr–McGee "a legitimate class of one," which could be singled out without offending the bill of attainder clause. *See id.* Considering that the Act is in fact

---

*also* Reply Memorandum of the City of West Chicago in Support of the State Defendants' Motion to Dismiss at 4–10).

In any event, the issue of the breadth of defendants' motion is a red herring, since ripeness is a jurisdictional issue. The court is therefore free, indeed bound, to test the ripeness of all five counts of the complaint. *Regional Rail Reorgani-*

*zation Act Cases,* 419 U.S. 102, 138, 95 S.Ct. 335, 356, 42 L.Ed.2d 320 (1974) ("[B]ecause issues of ripeness involve, at least in part, the existence of a live 'Case or Controversy,' we cannot rely upon concessions of the parties and must determine whether the issues are ripe for decision in the 'Case or Controversy' sense." (footnote omitted)).

drafted broadly, it is clear the Act has not worked an attainder upon Kerr–McGee.

As far as Kerr–McGee's intent argument, *Nixon* once again instructs that Kerr–McGee cannot make out a claim for bill of attainder. Kerr–McGee being the intended target of the Act does not offend the bill of attainder clause; and, in any event, the act is worded broadly, such that even after the Act operates upon Kerr–McGee it could potentially operate on other entities, even if as it now stands the Act operates only upon Kerr–McGee. *See id.*

But even moving beyond the threshold issue of specificity, Kerr–McGee does not state a claim for bill of attainder. The "governing criteria" for determining whether an attainder has been worked have been clearly spelled out by the Supreme Court. Those criteria are: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes; and (3) whether the legislative record 'evinces a congressional intent to punish.'" *Selective Serv. Sys.*, 468 U.S. at 852, 104 S.Ct. at 3355 (quoting *Nixon*, 433 U.S. at 473, 475–76, 478, 97 S.Ct. at 2805, 2806–07, 2808). Examining these criteria once again leads to the conclusion that Kerr–McGee has not stated a claim for bill of attainder upon which relief can be granted.

While the Act does not impose the truly historical burden that the original understanding of a bill of attainder contemplated—namely, death—plaintiff has argued the Act imposes a burden now recognized as a violation of the bill of attainder clauses: punitive confiscation of property. *Selective Serv. Sys.*, 468 U.S. at 852, 104 S.Ct. at 3355. Leaving aside the issue of whether property is confiscated, the court holds the fee collection provision is not punitive. In *Selective Serv. Sys.*, the Supreme Court held the Military Selective Service Act, denying federal financial assistance under Title IV of the Higher Education Act of 1965 to male students who fail to register for the draft, not to be a bill of attainder. The Court held that the act at issue "sought, not to punish any-

one, but to promote compliance with the draft registration requirement." *Id.* at 854, 104 S.Ct. at 3357 (footnote omitted). The same is true of the structure of the Illinois Act and the legislative history referenced by plaintiff's complaint. Plaintiff has not sufficiently alleged that the Act is a punishment for past behavior as opposed to an incentive for future behavior. Kerr–McGee may be the target of encouragement, but it is not the target of punishment.

Furthermore, there is no doubt the Act reasonably can be said to further nonpunitive purposes. The legislative purposes section of the Act states that "[i]t is the purpose of this Act to establish a comprehensive program for the timely decommissioning of uranium and thorium mill tailings facilities in Illinois and for the decontamination of properties that are contaminated with uranium or thorium mill tailings. It is the intent of the General Assembly that such a program provide for the safe management of these mill tailings and that the program encourage public participation in all phases of the development of this management program." 420 ILCS 42/5(b).

Finally, the legislative record does not evince a legislative intent to punish. The legislative history Kerr–McGee's complaint incorporates addresses Kerr–McGee's situation, no doubt. But if legislation were invalid for being influenced—or even caused—by a particular need or experience then invalidation based on the bill of attainder clause would be closer to the rule, rather than the rare exception it is meant to be. *See Legislature of State of California v. Eu*, 54 Cal.3d 492, 525–27, 286 Cal.Rptr. 283, 816 P.2d 1309, 1329–30 (1991) (*en banc*) (state term limits statute not a bill of attainder despite some legislative history suggesting intent to end careers of specific long-term legislators), *cert. denied*, — U.S. — & —, 112 S.Ct. 1292 & 1293, 117 L.Ed.2d 516 (1992).

Accordingly, defendants' motion is granted as to Count III under Rule 12(b)(6).

## COUNT IV: TAKINGS

▪ Count IV alleges an unconstitutional taking in violation of the fourteenth amend-

ment. As defendants and intervenor-defendant have noted, the taking is not certain to occur, and the nature of the taking were it to occur is uncertain. The structure of the Act anticipates that Kerr–McGee is to be reimbursed for clean-up expenditures from the fees. 420 ILCS 42/15(b). Therefore, until Kerr–McGee has been refused such reimbursement a takings claim is not ripe. Kerr–McGee has expressed fear that the state will never repay it; but the ripeness doctrine is meant to avoid litigation over such fears— only actual harms, not fears, state an actual case or controversy. If Kerr–McGee concludes it is wronged by the state in the operation of the Act, it may then be able to pursue a remedy. This is a situation in which the facts are not developed enough for the court to resolve the dispute.

■ Furthermore, a claim of unconstitutional taking in violation of the fourteenth amendment presents special ripeness problems. A takings claim is analyzed under the general two-part *Abbott Laboratories* test with a special gloss. A claim of taking to be ripe must have been preceded by a state inverse condemnation proceeding, where one is available. *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 194, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985) ("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."); *see also Coniston Corp. v. Village of Hoffman Estates,* 844 F.2d 461, 463–64 (7th Cir.1988). The logic here is straightforward: There cannot be a ripe claim of taking without just compensation until it is determined that the state refuses to compensate. A "taking" *with* just compensation, after all, is perfectly constitutional.

Illinois does provide for such an inverse condemnation proceeding. *See* 735 ILCS 5/7–101 ("Private property shall not be taken or damaged for public use without just compensation...."); *see also Mahoney Grease Serv., Inc. v. City of Joliet,* 85 Ill.App.3d 578, 583–84, 40 Ill.Dec. 708, 712, 406 N.E.2d 911, 915 (1980). Therefore, plaintiff's failure to

pursue (or at the very least failure to allege pursuing) its state remedy would leave its takings claim unripe even if the alleged confiscation had already occurred.

Count IV is therefore dismissed under Rule 12(b)(1) for lack of jurisdiction.

## COUNT V: DUE PROCESS

### *Ripeness*

Evaluation of the due process claims in Count V must be broken down into subparts because the due process count contains a number of separate aspects.

■ The count alleges that the statute is unconstitutionally vague. Here the court's analysis gains little, if anything, by a more developed factual record, and so the court considers that aspect of the count ripe.

■ The count also claims Illinois gains an unfair bargaining advantage, and that aspect of the count is similarly ripe. The burden alleged would be happening now, so hardship is present. The claim appears ready for review for the same reason—what harm Kerr–McGee alleges would be happening now.

■ Finally, the count alleges "arbitrary confiscation of property." For the reasons discussed regarding the ripeness of the takings claim (Count IV), the court considers this aspect of Count V not ripe. Until Illinois is given an opportunity to implement the Act, Kerr–McGee's fears and suspicions are just that. Kerr–McGee asks the court to assume, despite statutory assurances of reimbursement, that Illinois will not reimburse. This the court will not do. Therefore, the court holds that the "arbitrary confiscation of property" aspect of Count V is not ripe for review.

### *Failure to State a Claim*

As intervenor-defendant West Chicago notes, plaintiff failed in its reply brief to defend the legal sufficiency Count V's vagueness allegation, and therefore effectively concedes that, as to that allegation, the count fails to state a claim upon which relief can be granted. Nonetheless the court indepen-

dently examines all aspects of the count, and concludes that those aspects of the count now ripe do not state a claim upon which relief can be granted.

 Most clearly, plaintiff will not be able to make out a claim that the Act is vague. "An unconstitutionally vague statute is one compelling a person of average intelligence to guess and resort to conjecture as to its meaning and/or as to its supposedly mandated application." *United Nuclear Corp. v. Cannon,* 553 F.Supp. 1220, 1233 (D.R.I.1982) (citing *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). Here the Act's meaning and mandated application are clear; certainly clear enough to satisfy the constitution's proscription of vagueness. Nothing in plaintiff's entirely summary allegation of vagueness contradicts this reading of the Act. (Complaint ¶ 65)

Also, plaintiff's claim that the Act was enacted for an illegitimate purpose— gaining an unfair bargaining advantage with plaintiff—does not withstand a motion to dismiss. As defendants note, legislative "purpose" is not in this situation a valid grounds for declaring the statute unconstitutional. *See United States v. O'Brien,* 391 U.S. 367, 382–83, 88 S.Ct. 1673, 1682, 20 L.Ed.2d 672 (1968). This is not to say that intent of the legislature is never a part of constitutional analysis. However, an otherwise constitutional statute is not to be examined for bad motive on the part of the legislature. If a statute "could be reenacted in its exact form if the same or another legislator made a 'wiser' speech about it," then allegations of stated intent do not make out a claim of unconstitutionality. *United States v. O'Brien,* 391 U.S. at 384, 88 S.Ct. at 1683. That part of Count V alleging arbitrary confiscation of property is dismissed for failure to state a claim upon which relief can be granted.

Accordingly, plaintiffs motion to dismiss as to Count V is granted in part for failure to state a claim upon which relief can be granted, Rule 12(b)(6), and in part for lack of jurisdiction, Rule 12(b)(1).

## CONCLUSION

Accordingly, defendants' Rule 12 motion to dismiss is granted in part and denied in part. Specifically, defendants' motion is granted as to Count I under Rule 12(b)(1), as to Count III under Rule 12(b)(6), as to Count IV under Rule 12(b)(1), and as to Count V under Rule 12(b)(1) in part and Rule 12(b)(6) in part; defendants' motion is denied as to Count II.