**N & N CATERING COMPANY, INC., Plaintiff,**

v.

**CITY OF CHICAGO, Defendants.**

**Alberto Bedoya d/b/a Casanovas, Inc., Plaintiff,**

v.

**City of Chicago, Richard M. Daley, as Mayor and Commissioner of the Liquor Control Commission of the City of Chicago, Liquor Control Commission of the City of Chicago, Defendants.**

**Club Misty Inc., d/b/a Tequila Roadhouse, Plaintiff,**

v.

**James Laski, Clerk of the City of Chicago, Board of Election Commissioners of the City of Chicago, and City of Chicago, Defendants.**

Nos. 98 C 6961, 98 C 7831, 98 C 8054.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 17, 1999.

J. Brian Pierce, J. Brian Pierce & Associates, Chicago, IL, James Frederick Carlson, Law Offices of James F. Carlson, Chicago, IL, for N & N Catering Company, Inc., plaintiff.

J. Brian Pierce, J. Brian Pierce & Associates, Chicago, IL, for Alberto Bedoya, plaintiff.

Michael A. Moses, Richard G Schoenstadt, Morton Siegel, James L. Webster, Siegel, Moses, Schoenstadt & Webster, P.C., Chicago, IL, for Club Misty, Inc., plaintiff.

Patrick Walter Johnson, City of Chicago, Law Department, Corporation Counsel, Chicago, IL, Ralphette Gaston Rhodes, City of Chicago, Law Department, Chicago, IL, Norma Reyes, City of Chicago, Chicago, IL, Scott A. Frey, City of Chicago, Department of Law, Chicago, IL, for James Laski, defendant.

James Michael Scanlon, James M. Scanlon & Associates, Chicago, IL, for Board of Election Commissioners of the City of Chicago, defendant.

Patrick Walter Johnson, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, Ralphette Gaston Rhodes, City of Chicago Law Dept., Chicago, IL, Michael A. Forti, Scott A. Frey, City of Chicago, Department of Law, Chicago, IL, Norma Reyes, City of Chicago, Chicago, IL, for City of Chicago, Richard M. Daley, defendants.

Patrick J. Solberg, Illinois Attorney General's Office, Chicago, IL, Patrick Walter Johnson, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, Michael A. Forti, Scott A. Frey, City of Chicago Dept. of Law, Chicago, IL, for State of Illinois Liquor Control Commission, defendant.

Patrick Walter Johnson, City of Chicago, Law Department, Corporation Counsel, Chicago, IL, Michael A. Forti, Scott A. Frey, City of Chicago, Department of Law, Chicago, IL, for James Laski, defendant.

## OPINION and ORDER

NORGLE, District Judge.

Before the court are challenges to the constitutionality of the single-address local option provision of the Illinois Liquor Control Act, 235 ILCS 5/9–2 (1995). For the following reasons, those challenges brought pursuant to the federal constitution are denied. The court declines to exercise its jurisdiction over the claim attacking the Liquor Control Act on state constitutional grounds.

### I. BACKGROUND

The plaintiffs in these three related actions hold state and city licenses authorizing them to sell alcohol at their respective establishments within the City of Chicago. What they share in common is that single-address local option referenda under the Illinois Liquor Control Act ("Liquor Control Act"), 235 ILCS 5/9–2 (1995), jeopardize the validity of their liquor licenses. In a prior Opinion and Order, this court temporarily enjoined on due process grounds the enforcement of a local option referendum passed pursuant to the Liquor Control Act. If operative, the referendum would have extinguished Plaintiff N & N Catering Company's ("N & N") licenses to sell alcohol at the International Amphitheatre. See N & N Catering Co. v. City of Chicago, 26 F.Supp.2d 1067 (N.D.Ill. 1998).

Two other liquor licensees, Alberto Bedoya ("Bedoya") and Club Misty Inc.

("Club Misty"), have since filed actions in federal court on the same constitutional grounds as N & N. Because their respective complaints include claims nearly identical to those raised by N & N, Bedoya and Club Misty each moved for reassignment of their cases to this court pursuant to Local Rule 2.31. Like N & N, Bedoya seeks an order enjoining enforcement of a local option referendum passed in the November 3, 1998, election. The City of Chicago ("the City"), however, has agreed not to enforce *any* local option referenda from that election until the court issues a final ruling on the constitutionality of the Liquor Control Act. In contrast to N & N and Bedoya's claims for post-election relief, Club Misty seeks a pre-election ruling that would enjoin placement of a local option referendum on the ballot for the February 23, 1999, election.

Although the three related cases may not be at identical stages of litigation, they each seek a decision on the same constitutional issues. In fact, N & N, Bedoya, and Club Misty (collectively referred to as "the Licensees") have filed consolidated memoranda in support of their claims. Thus, in the interests of judicial economy, the court submits the following opinion as a comprehensive adjudication of all three actions.

### N & N Catering Co. v. City of Chicago, 98 C 6961

N & N is licensed to sell alcoholic beverages for on-premises consumption at 4220 S. Halsted in Chicago; 4220 S. Halsted is a notable address in Chicago because it is the site of the International Amphitheatre ("the Amphitheatre"), an arena which has a considerable place in the city's history.[1] In July 1998, certain residents of the precinct surrounding the Amphitheatre initiated a campaign to prohibit the sale of alcohol at the arena's address. Pursuant to the local option provision of the Liquor Control Act, 235 ILCS 5/9-2, those residents began circulating petitions that would allow precinct voters to decide, via referendum, whether to prohibit the sale of alcohol at 4220 S. Halsted. The petition read, in relevant part:

To the City Clerk or the City of Chicago, Illinois:

The undersigned, residents of the *35th* Precinct of the *11th* Ward of the City of Chicago, County of Cook, State of Illinois, respectfully petition that you cause to be submitted in the manner provided by law, to the voters thereof, at the next election to be held on November 3, 1998 the proposition:

"Shall the sale at retail of alcoholic liquor be prohibited at the following address:

*4220 South Halsted Street, Chicago, Illinois "*

(N & N Orig.Mem., Ex. A.); *see also* 235 ILCS 5/9-2, 9-4.

By August 4, 1998, the petition included the "signatures of not less than 40% of the legal voters" residing in the precinct, thereby requiring the Clerk of the City of Chicago to take the necessary administrative steps to place the referendum on the November 3rd ballot. *See* 235 ILCS 5/9-2, 9-10.

N & N, however, sought to prevent the referendum from being placed on the November 3rd ballot. On October 8, 1998, N & N filed suit in state court against James Laski ("Laski"), as Clerk of the City of Chicago, and the Board of Election Commissioners of the City of Chicago ("the Board of Election"). In its complaint, N & N challenged the validity of the petitions, *see* 235 ILCS 5/9-4, 9-19, and alleged that the Liquor Control Act deprived it of due process of law. (*See* City's Orig.Resp. at 1, 10.) On October 21, 1998, the Circuit Court of Cook County dismissed the suit, concluding that "[t]he failure of the Plaintiffs in this cause to file

---

**1.** For a brief review of some of the events that have taken place at the Amphitheatre, see *N & N Catering Co.*, 26 F.Supp.2d at 1068 (*citing* John Kass, *Daley Wants to Buy, Raze Amphitheatre*, Chicago Trib., October 9, 1996 (Metro Chicago section), at 3, 1996 WL 2715347 and Robert Davis, *Amphitheatre Comes Back From Oblivion*, Chicago Trib., November 27, 1987, (Chicagoland section), at 1, 1987 WL 2999569).

a bond for costs within the time prescribed by 235 ILCS 5/9–4 deprives this court of jurisdiction to hear this cause." (*Id.*, Ex. 1.) On October 30, 1998, the Illinois Appellate Court issued an order affirming the trial court's decision. (*Id.*, Ex. 2.)

On that same day, N & N filed a six-count complaint in federal court under 42 U.S.C. § 1983 and 28 U.S.C. § 1367(a), again naming Laski and the Board of Election as defendants. N & N alleges that the single-address local option provision of the Liquor Control Act, 235 ILCS 5/9–2, violates its rights under the United States and Illinois constitutions. Specifically, the complaint alleges that the Liquor Control Act: (1) deprives N & N of its liquor license without due process of law in violation of the Fourteenth Amendment; (2) violates N & N's "rights to equal protection of the laws under the Fourteenth Amendment" by treating N & N differently from other similarly situated establishments within the 35th precinct; (3) violates the Bill of Attainder Clause of Article I, Section 10, of the United States Constitution by creating "a mechanism through which voters enact into law a provision which legislatively singles out an identifiable individual establishment for guilt and punishes it without the protection of judicial trial"; (4) creates an arbitrary and groundless distinction between the City of Chicago and all other municipalities within Illinois, thereby depriving licensees within the City of Chicago of equal protection of the laws under the Fourteenth Amendment; and (5) grants a special privilege and immunity to similarly situated retail establishments located outside the City of Chicago in violation of the Special Legislation Clause, Article 4, Section 13 of the 1970 Illinois Constitution.

To those ends, N & N's prayer for relief seeks the following: (1) an order declaring the single-address local option provision of 235 ILCS 5/9–2 unconstitutional, invalid and void; (2) a preliminary, and ultimately permanent, injunction voiding the results of the November 3rd referendum and prohibiting its enforcement; (3) a preliminary, and ultimately permanent, injunction prohibiting the City from taking any adverse action against N & N in relation to the November 3rd referendum; and (4) reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

With the November 3rd election date fast-approaching, N & N immediately moved for a temporary restraining order to enjoin Laski and the Board of Election from placing the referendum on the ballot. On November 2, 1998, however, N & N withdrew its motion, and the court ordered this matter certified to the Attorney General of the State of Illinois pursuant to 28 U.S.C. § 2403(b). *See also* Fed.R.Civ.P. 24(c); *Perez v. City of Chicago*, 95 C 685, 1995 WL 410981, at *6 (N.D.Ill. July 10, 1995).

The referendum was thus placed to a vote on November 3, 1998. The final voting tally was 178 in favor of passing the referendum and 88 against. Put another way, 67% of the ballots cast in the 35th precinct indicated that voters wanted to prohibit the sale of alcohol at the Amphitheatre. The referendum's passage by a simple majority of 35th precinct voters thus extinguished N & N's licenses to sell alcohol at the venue. *See* 235 ILCS 5/9–2.

As provided in the Liquor Control Act, the results of the referendum "become operative on the 30th day after the day of the election at which such vote is cast." 235 ILCS 5/9–3. Although N & N abandoned its effort in federal court to enjoin the referendum from being placed to a vote, it still sought to enjoin the impending, early December enforcement date of the referendum.

In support of its prayer for declaratory and injunctive relief, N & N presented only two arguments. First, N & N argued that the Liquor Control Act denies it due process of law by allowing a precinct to vote a single address dry. Second, N & N argued that the Liquor Control Act violates the Special Legislation Clause of the Illinois Constitution because it "arbitrarily distinguishes between Chicago and other municipalities in Illinois." On December 3, 1998, this court issued a preliminary

injunction that enjoined the City's enforcement of the referendum on due process grounds. The court, however, expressed reservations about the merits of N & N's due process claim and declined to determine conclusively at that juncture whether the Liquor Control Act withstands constitutional scrutiny. In the meantime, the parties have presented further arguments on the issue, and the Illinois Attorney General has notified the court that it declines to participate in this action. *See generally* 28 U.S.C. § 2403(b); 15 ILCS 205/4. Thus, Case Number 98 C 6961 is now ripe for final disposition on all of N & N's claims for declaratory and permanent injunctive relief.

### Alberto Bedoya d/b/a Casanova's Inc. v. City of Chicago, et al., 98 C 7831

Plaintiff in Case Number 98 C 7831 is Alberto Bedoya ("Bedoya"), a liquor licensee in the 8th Precinct of the 33rd Ward. Since 1980, Bedoya has sold alcoholic beverages for on-premises consumption at 2415 W. Lawrence Avenue, where he operates an establishment called "Casanova's." Pursuant to the Liquor Control Act, residents of the 8th Precinct voted in the November 3rd election to prohibit the sale of alcohol at "2415 W. Lawrence Ave., Chicago." The local option referendum passed by a tally of 176 to 52.

In the wake of the court's Opinion and Order granting temporary injunctive relief in favor of N & N, Bedoya filed a complaint for declaratory and injunctive relief on December 11, 1998. Like N & N, Bedoya notes that several other liquor establishments within his precinct remain in business—not threatened by the prospect of a local option referendum. The only relevant difference between N & N's action and Bedoya's is that Bedoya's complaint does not include a claim that the Liquor Control Act violates the Bill of Attainder Clause of the United States Constitution, Art. I, § 10, cl. 1. As already noted, the City has agreed to stay enforce-

ment of the results of local option referenda from the November 3rd election until this court issues a final ruling on the constitutionality of the Liquor Control Act. Therefore, the court may proceed directly to Bedoya's claims for declaratory and permanent injunctive relief.

### Club Misty, Inc. d/b/a Tequila Roadhouse v. Laski, et al., 98 C 8054

Plaintiff in Case Number 98 C 8054 is Club Misty, Inc., a liquor licensee in the 26th Precinct of the 43rd Ward. Since the early 1980's, Club Misty has sold alcoholic beverages for on-premises consumption at 1653 N. Wells Street, where it currently operates an establishment called "Tequila Roadhouse." Soon after the November 1998 election, certain residents of the 26th Precinct initiated a campaign to prohibit the sale of alcohol at that address. Pursuant to the local option provision of the Liquor Control Act, 235 ILCS 5/9–2, those residents began circulating a petition that would allow precinct voters to decide in the February 23, 1999, election whether the sale of alcohol should be prohibited at 1653 N. Wells Street. With over 95% of 26th precinct residents residing in one high-rise building, the petition drive did not entail neighborhood canvassing, and was successful in obtaining the requisite amount of signatures within two weeks.[2]

On December 15, 1998, Club Misty filed a federal complaint alleging the same claims as N & N's complaint, including a claim that the Liquor Control Act violates the Bill of Attainder Clause. The only notable difference in Club Misty's action is that it filed suit in federal court well-before the election. Nonetheless, that Club Misty seeks preemptive relief does not preclude the adjudication of its action with *N & N Catering* and *Bedoya.*

## II. DISCUSSION

### A. Overview

The regulation of alcohol has a long history in the United States, with the Pro-

---

2. Out of 209 signatories to the petition, only one does not reside in the high-rise building.

(*See* Club Misty Compl., Ex. 1.)

hibition Era being the most notable period. *See generally Craig v. Boren,* 429 U.S. 190, 205, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Mugler v. Kansas,* 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887); Mihir A. Munshi, *Share the Wine—Liquor Control in Pennsylvania: A Time for Reform,* 58 U.Pitt.L.Rev. 507, 508–12 (Winter 1997). The Eighteenth Amendment in 1919 initiated the Prohibition Era, as it prohibited "the manufacture, sale, or transportation of intoxicating liquors" in the United States and its territories. In 1933, the Twenty-first Amendment repealed the Eighteenth Amendment and "delegated to the several states the power to prohibit commerce in, or the use of, alcoholic beverages." *44 Liquormart v. Rhode Island,* 517 U.S. 484, 514, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996). Since then, however, the Supreme Court has commented that "the [Twenty-first] Amendment does not license the States to ignore their obligations under other provisions of the Constitution." *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 712, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984); *see also 44 Liquormart,* 517 U.S. at 516, 116 S.Ct. 1495 (holding that "the Twenty-first Amendment does not qualify the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amendment."). "Neither the text nor the history of the Twenty-first Amendment suggests that it qualifies individual rights protected by the Bill of Rights and the Fourteenth Amendment where the sale of liquor is concerned." *Craig,* 429 U.S. at 206, 97 S.Ct. 451 (citation and internal quotation marks omitted). Yet the Court has also recognized that "[e]ntirely apart from the Twenty-first Amendment, the State has ample power to prohibit the sale of alcohol in inappropriate locations." *44 Liquormart,* 517 U.S. at 515, 116 S.Ct. 1495.

Indeed, "[l]iquor laws are enacted by virtue of the [State's] police power to protect the health, morals, and welfare of the public." *Eberle v. People of the State of Michigan,* 232 U.S. 700, 707, 34 S.Ct. 464, 58 L.Ed. 803 (1914); *see also Ziffrin, Inc. v. Reeves,* 308 U.S. 132, 138, 60 S.Ct. 163, 84 L.Ed. 128 (1939); *cf. Scott v. Village of Kewaskum,* 786 F.2d 338,,341 (7th Cir. 1986) ("The twenty-first amendment gives states special powers over the sale of liquor, powers that have been held to diminish even rights granted by the first amendment and hence the fourteenth."); *United Beverage Co. of South Bend, Inc. v. Indiana Alcoholic Beverage Comm.,* 760 F.2d 155, 159 (7th Cir.1985) ("[T]he states have, by virtue of the Twenty–First Amendment, broader authority over the liquor business than over any other business ... though of course not plenary authority....").

Via the local option provision of the Liquor Control Act, Illinois law provides a democratic mechanism, a referendum, in which residents of Chicago precincts may prohibit the sale of alcohol precinct-wide or at a single address. *See* 235 ILCS 5/9–2. In a case nearly a century ago, the Court refused to strike down a similar local option provision in Alabama, rejecting the argument that a vote in favor of precinct-wide prohibition violated a liquor seller's due process rights. *See Rippey v. Texas,* 193 U.S. 504, 509–10, 24 S.Ct. 516, 48 L.Ed. 767 (1904). The Court concluded that a state "does not abridge" its power over the sale of alcohol by allowing its citizens to vote on prohibition. *Id.; see also Ohio v. Dollison,* 194 U.S. 445, 448–49, 24 S.Ct. 703, 48 L.Ed. 1062 (1904). Similarly, in a relatively recent case addressing a precinct-wide prohibition under the Liquor Control Act, the Seventh Circuit remarked, "Illinois local-option liquor law is just section 2 of the Twenty–First Amendment writ small."[3] *Philly's v.*

---

**3.** Section 2 of the Twenty-first Amendment provides that "[t]he transportation or importation into any State ... for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited". U.S. Const. amend. XXI, § 2. Though the language of § 2 does not appear to authorize state control of the sale of liquor, that is how

*Byrne,* 732 F.2d 87, 92 (7th Cir.1984). *But see 87 South Rothschild Liquor Mart v. Kozubowski,* 752 F.Supp. 839, 842 (N.D.Ill. 1990) (declaring the *"single establishment"* local option provision of the Liquor Control Act (1989) unconstitutional on due process grounds). Further, the *Philly's* court deemed a precinct-wide referendum to decide whether liquor may be sold in a particular area "a pragmatic as well as venerable response to the social problems created by the sale and consumption of liquor." *Philly's,* 732 F.2d at 92. The Sixth Circuit, while reviewing a similar local option provision under Ohio law, shared this view, commenting: "Local voters possess a legitimate interest in regulating the types, modes, and circumstances of alcohol sales in their neighborhood." *37712, Inc. v. Ohio Dept. of Liquor Control,* 113 F.3d 614, 620 (6th Cir.1997); *see generally* Shelly Ross Saxer, *"Down with Demon Drink!": Strategies for Resolving Liquor Outlet Overconcentration in Urban Areas,* 35 Santa Clara L.Rev. 123 (1994).

Of course in each of the instant cases, it appears that the primary concern of local voters is the sale of alcohol at a single address, rather than the overall sale of alcohol in their respective precincts. Consequently, the Licensees each contend that they are being unfairly targeted while other liquor licensees within their respective precincts continue to sell alcohol without protest. That raises questions with respect to the fairness of the Liquor Control Act. Nonetheless, the perceived unfairness of the Liquor Control Act is not the issue here; nor is the wisdom of the legislature. The question is simply whether the Liquor Control Act passes constitutional scrutiny. *Cf., e.g., Ferguson v. Skrupa,* 372 U.S. 726, 730, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963) ("The doctrine that ... due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely ... has long since been discarded."). That said, the court turns to the constitutional issues at bar.

> courts have interpreted the section. *See* Laurence H. Tribe, *How to Violate the Constitution without Really Trying: Lessons from the*

As a preliminary matter, it is well-established that federal courts generally are reluctant to declare state statutes unconstitutional, as state statutes are entitled to a presumption of constitutionality. *See Dept. of Revenue of Mont. v. Kurth Ranch,* 511 U.S. 767, 796, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994); *Illinois v. Krull,* 480 U.S. 340, 351, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987); *Cohen v. City of Des Plaines,* 8 F.3d 484, 489 (7th Cir.1993); *Andree v. Ashland Cty.,* 818 F.2d 1306, 1313 (7th Cir.1987). At least two points follow from this statement.

■ First, the burden is on the Licensees to show that the Illinois Liquor Control Act is unconstitutional. *Cf. United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *In re Konizeski,* 820 F.2d 982, 990 (9th Cir. 1987); *Kraft General Foods, Inc. v. Iowa Dept. of Rev.,* 505 U.S. 71, 82–83, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992) (Rehnquist, C.J., dissenting). The Licensees, however, submit supporting arguments only on their claims under the Due Process Clause, the Bill of Attainder Clause, and the Special Legislation Clause of the Illinois Constitution. (Licensees' Supp.Mem. at 43 n. 22 (express waiver of one equal protection argument)). Because the Licensees fail to present arguments on their remaining claims, *e.g.,* their equal protection claims, the court deems those claims waived. *See Mathis v. New York Life Ins. Co.,* 133 F.3d 546, 548 (7th Cir.1998) (" 'A litigant who fails to press a point by supporting with pertinent authority, or by showing why it is sound despite a lack of supporting authority ... forfeits the point. We will not do his research for him.' ") (*quoting Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir.1990)); *see also Sledd v. Lindsay,* 102 F.3d 282, 288 (7th Cir.1996); *Doe v. Johnson,* 52 F.3d 1448, 1457 (7th Cir.1995).

> *Repeal of Prohibition to the Balanced Budget Amendment,* 12 Const.Comment. 217, 218–21 (Summer, 1995).

Second, federal courts' reluctance to address issues of state governance is intertwined with an important doctrine that the parties have failed to raise here: abstention. Nonetheless, there is currently no certain indication that the court should abstain from exercising its federal (original) jurisdiction in favor of the state courts. *See generally Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ("Abstention from the exercise of jurisdiction is the exception, not the rule."); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Railroad Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Waldron v. McAtee,* 723 F.2d 1348, 1351 (7th Cir.1983); *Ahrensfeld v. Stephens,* 528 F.2d 193, 196 (7th Cir. 1975); *Lowery v. Schnorf,* 97 C 6688, 1998 WL 341835, at *3 (N.D.Ill. June 18, 1998); *Jack & Lou's, Inc. v. County of Cook,* 93 C 5196, 1994 WL 91963, at *2 (N.D.Ill. March 18, 1994); *Ross v. City of Chicago,* 89 C 8049, 1989 WL 157332, at *4 (N.D.Ill. Dec. 18, 1989); *Van Drunen v. Village of South Holland,* 550 F.Supp. 258, 260 (N.D.Ill.1982). Though the constitutionality of a state statute is at issue, the court has a "virtually unflagging obligation" to exercise its jurisdiction over federal questions—in this case via 42 U.S.C. § 1983. *Illinois Bell Tel. Co. v. Illinois Commerce Comm'n,* 740 F.2d 566, 569 (7th Cir.1984) (*quoting Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236); *see also Toney v. Burris,* 829 F.2d 622, 624 (7th Cir.1987) ("[B]ecause the statute implicated the plaintiff's due process rights under the fourteenth amendment to the federal Constitution there was no reason for the district court to abstain from deciding the case in favor of the state courts.").

▪ That obligation is not nearly as exacting with respect to the court's jurisdiction over supplementary state claims. *See* 28 U.S.C. § 1367(c). While this suggests that the court should initially address the Licensees' federal claims, the doctrine of constitutional avoidance teaches that "federal courts should avoid addressing federal constitutional issues when it is possible to dispose of a case on pendent state grounds." *Triple G Landfills, Inc. v. Bd. of Commissioners of Fountain County, Ind.,* 977 F.2d 287, 291 (7th Cir. 1992); *see also RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir. 1997). It is not clear, however, whether the court should address the pendent state claim here, *i.e.,* the Licensees' assertion that the Liquor Control Act's population classification violates the Special Legislation Clause of the 1970 Illinois Constitution.[4] That claim calls for a federal court to determine whether a state statute runs afoul of a state constitution; such a question is better-suited for the Illinois state courts, and ultimately the Illinois Supreme Court, to answer. *See BMW of North America, Inc. v. Gore,* 517 U.S. 559, 577, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) ("[O]nly state courts may authoritatively construe state statutes."). And though the Illinois Appellate Court has upheld the Liquor Control Act's population classification as constitutional under the Special Legislation Clause, (*see, e.g., Gorgees v. Daley,* 256 Ill.App.3d 143, 195 Ill.Dec. 257, 628 N.E.2d 721, 726 (1993) and *Rincon v. License Appeal Comm'n,* 62 Ill.App.3d 600, 19 Ill.Dec. 406, 378 N.E.2d 1281, 1285–86 (1978)), the Illinois Supreme Court (post 1970) has yet to address the precise claim asserted by the Licensees. *Contrast Johnkol, Inc. v. License Appeal Comm'n,* 42 Ill.2d 377, 247 N.E.2d 901, 903–04 (1969) (in case not involving local option provision, population classification under the Liquor Control Act was *invalid* ) and *Shepard v. Illinois Liquor Control Comm'n,* 43 Ill.2d 187, 251 N.E.2d 206, 207–09 (1969) (same) *with Anderson v. Nick,* 402 Ill. 508, 84 N.E.2d 394, 398–99

---

4. The Special Legislation Clause provides: "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter of judicial determination." Ill. Const.1970, art. IV, § 13.

(1949) (population classification under the Liquor Control Act's precinct-wide local option provision was *valid* ); *see generally Lumpkin v. Cassidy,* 184 Ill.2d 117, 234 Ill.Dec. 389, 703 N.E.2d 1, 5 (1998); *Best v. Taylor Machine Works,* 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057, 1069 (1998). Even in light of *Gorgees* and *Rincon* (and *Anderson* ), it would still be incumbent on this court to predict how the Illinois Supreme Court would resolve the issue today. *See Allen v. Transamerica Ins. Co.,* 128 F.3d 462, 466 (7th Cir.1997). The court declines to do so.

Thus, notwithstanding the possibility of abstention and the doctrine of constitutional avoidance, the court exercises its jurisdiction over the Licensees' § 1983 claims, and declines to exercise supplementary jurisdiction over their state law claim. *Cf. RAR, Inc.,* 107 F.3d at 1277 (in absence of Illinois case law on issue, stating hesitancy "to venture unguided into Illinois state constitutional law"); *United Beverage Co. of South Bend, Inc. v. Indiana Alcoholic Beverage Comm'n,* 760 F.2d 155, 157 (7th Cir.1985) (declining to exercise jurisdiction over pendent state law claim after addressing federal constitutional claims); 28 U.S.C. § 1367(c)(1) (stating that a district court may decline to exercise supplemental jurisdiction over a state law claim if "the claim raises a novel or complex issue of State law.").

### B. Due Process

■ "The Fourteenth Amendment protects persons from state governmental deprivations of life, liberty, or property without due process of law." *Pro–Eco, Inc. v. Bd. of Commiss. of Jay County,* 57 F.3d 505, 512 (7th Cir.1995). A procedural due process claim under the Fourteenth Amendment is brought pursuant to 42 U.S.C. § 1983, and "require[s] a two-step analysis." *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996); *Kim Constr. Co. v. Bd. of Trustees of Village of Munde-*

*lein,* 14 F.3d 1243, 1245 (7th Cir.1994); *Greco v. Guss,* 775 F.2d 161, 170 (7th Cir.1985).[5] As a threshold inquiry, the court must determine whether an Illinois liquor license is a property interest; if that query is answered in the affirmative, the next step is to determine "what process is due." *Doherty,* 75 F.3d at 322. However, if the Licensees cannot establish that they have a property interest in their liquor licenses, their due process claims must fail. *See Kim Constr. Co.,* 14 F.3d at 1245; *Cornelius v. LaCroix,* 838 F.2d 207, 212 (7th Cir.1988).

In its prior Opinion and Order, the court reviewed the language of the Liquor Control Act and cases from Illinois courts (federal and state) to determine whether N & N had made a sufficient showing, for purposes of a preliminary injunction, that it had a property interest in its liquor license. *See N & N Catering Co.,* 26 F.Supp.2d at 1071–77. From the outset, the court noted the continuing difference of opinion among Illinois courts as to whether a liquor license is a property interest or a mere "privilege." *See id.* at 1072; *see also Esmail v. Macrane,* 862 F.Supp. 217, 225 (N.D.Ill.1994) (recognizing that "there appears to be some dispute as to whether a liquor license is a property right under Illinois law"), *rev'd on other grounds,* 53 F.3d 176 (7th Cir.1995). Upon review of the relevant case law, the court expressed reservations as to whether N & N could ultimately show that it had a property interest in its Illinois liquor license. Nonetheless, the court found that there were at least arguable grounds indicating that N & N had such an interest. *See N & N Catering Co.,* 26 F.Supp.2d at 1076–77.

The court then concluded that N & N had met its burden with respect to the process prong of the due process inquiry. *See id.* at 1077–79. In doing so, the court

5. Some courts have presented the due process inquiry in three steps: (1) whether there was a property interest under the Fourteenth Amendment; (2) whether the alleged loss amounted to a deprivation; (3) whether that deprivation was without due process of law. *See Bayview–Lofberg's, Inc. v. City of Milwaukee,* 905 F.2d 142, 144 (7th Cir.1990).

primarily relied on *Philly's v. Byrne*, 732 F.2d 87, 92–93 (7th Cir.1984) and *87 South Rothschild Liquor Mart v. Kozubowski*, 752 F.Supp. 839, 842 (N.D.Ill.1990). As discussed below, the Seventh Circuit in *Philly's* held that a referendum which prohibits the sale of liquor precinct-wide does not violate due process. *See* 732 F.2d at 92–93. The *Philly's* court reasoned that the "across the board" nature of a precinct-wide referendum was an adequate safeguard against arbitrary and adjudicative action by the electorate. *See id.* at 93. In *87 South Rothschild*, the court addressed a former version of the Liquor Control Act (1989) that allowed voters to ban the sale of alcohol at a "single establishment." 752 F.Supp. at 841, 842. Relying on *Philly's*, the court in *87 South Rothschild* declared the single establishment provision unconstitutional because the safe-guard of a precinct-wide prohibition was missing. *See id.* at 842.

■ Though *Philly's* and *87 South Rothschild* are similar to the actions at bar, neither case affirmatively establishes that a licensee has a property interest in its liquor license. In fact, the court in *87 Rothschild* does not address the "property" prong in its due process analysis. Here, by contrast, the "property" prong is hotly-contested, and a resolution of that issue is required. The Licensees, however, have failed to persuade the court to abandon its initial reservations on the existence of a property interest, and thus the court's final and conclusive determination is that the Licensees have failed to show that they have a property interest in their liquor licenses. Accordingly, the court need not reach the "process" prong of the due process analysis.

Although " 'property' has never had a single, fixed meaning," *Patterson v. Portch*, 853 F.2d 1399, 1404 (7th Cir.1988), the Seventh Circuit has articulated essentially the same test for determining whether a property interest exists for purposes of the Due Process Clause of the Fourteenth Amendment. *See Mid–American Waste Systems, Inc. v. City of Gary*, 49 F.3d 286, 289 (7th Cir.1995); *Toulabi v. United States*, 875 F.2d 122, 125 (7th Cir. 1989); *Baja Contractors, Inc. v. City of Chicago*, 830 F.2d 667, 676 (7th Cir.1987); *Scott*, 786 F.2d at 341; *Reed v. Village of Shorewood*, 704 F.2d 943, 948 (7th Cir. 1983). In short, Seventh Circuit cases addressing "property" under the Due Process Clause reflect "efforts to implement the conclusion in [*Board of Regents v.*] *Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), that property depends on a legitimate claim of entitlement." *Mid–American Waste Systems, Inc.*, 49 F.3d at 289. In relevant part, the property inquiry articulated in *Roth* provides:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate expectation of entitlement to it. . . . Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

408 U.S. at 577, 92 S.Ct. 2701. Although *Roth* instructs that the "underlying substantive interest is created by 'an independent source such as state law,' [it is] federal constitutional law [that] determines whether the interest rises to the level of a 'legitimate claim of entitlement.'" *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). The court begins its inquiry with the state law at issue here—the Liquor Control Act.

The plain language of the Liquor Control Act would seem to solve the "liquor license as property" debate quite conclusively. *See* 235 ILCS 5/6–1. Indeed, the Liquor Control Act expressly states that a liquor license "shall not constitute property." *Id.* Further, by the terms of the

Liquor Control Act, a liquor license lacks many of the typical attributes of property. *Id.* For instance, a liquor license cannot be transferred or sold, and it is site-specific, in that it "applies only to the premises described in the application and in the license issued thereon...." 235 ILCS 5/7–14. The relevant portion of the Liquor Control Act is excerpted here:

> A license shall be purely a personal privilege, good for not to exceed one year after issuance ... unless sooner revoked as in this Act provided, and shall not constitute property, nor shall it be subject to attachment, garnishment or execution, nor shall it be alienable or transferable ... or subject to being encumbered or hypothecated. Such license shall not descend by the laws of testate or intestate devolution, but it shall cease upon the death of the licensee, provided that executors or administrators of the estate of any deceased licensee, and the trustee of any insolvent or bankrupt licensee, when such estate consists in part of alcoholic liquor, may continue the business ... under order of the appropriate court, and ... until the expiration of such license but not longer than six months after the death, bankruptcy or insolvency of such licensee. ...

235 ILCS 5/6–1.

Additionally, the Liquor Control Act states the terms for renewal of a liquor license:

> Any licensee may renew his license at the expiration thereof, provided he is then qualified to receive a license and the premises for which such renewal license is sought are suitable for such purpose; and provided further that the renewal privilege herein provided for shall not be construed as a vested right which shall in any case prevent the city council or village president and board of trustees or county board, as the case may be, from decreasing the number of

licenses to be issued within its jurisdiction.

*Id.*

Several courts, including this one, have relied upon the plain language of the Liquor Control Act to reject claims that a licensee has a property interest in its Illinois liquor license. *See Sapir v. City of Chicago,* 749 F.Supp. 187, 190 (N.D.Ill. 1990) (Norgle, J.); *Blue Cat Lounge, Inc. v. License Appeal Comm'n,* 281 Ill.App.3d 643, 217 Ill.Dec. 465, 667 N.E.2d 554, 557 (1996); *Roach Enterprises v. License Appeal Comm'n,* 277 Ill.App.3d 523, 214 Ill. Dec. 85, 660 N.E.2d 276, 282 (1996); *County of Cook v. Kontos,* 206 Ill.App.3d 1085, 152 Ill.Dec. 7, 565 N.E.2d 249, 252 (1990); *Ole, Ole, Inc. v. Kozubowski,* 187 Ill.App.3d 277, 134 Ill.Dec. 895, 543 N.E.2d 178, 181 (1989); *Ross v. Kozubowski,* 182 Ill.App.3d 687, 131 Ill.Dec. 248, 538 N.E.2d 623, 626 (1989); *Black Knight Restaurant, Inc. v. City of Oak Forest,* 159 Ill.App.3d 1016, 111 Ill.Dec. 863, 513 N.E.2d 109, 111 (1987); *Two Kats, Inc. v. Village of Chicago Ridge,* 147 Ill.App.3d 440, 101 Ill.Dec. 1, 497 N.E.2d 1314, 1315 (1986); *City of Wyoming v. Liquor Control Comm'n of Illinois,* 48 Ill.App.3d 404, 6 Ill.Dec. 258, 362 N.E.2d 1080, 1083 (1977). And other courts have relied on Illinois common law to reject the argument that an Illinois liquor license is property. *See Great Atlantic & Pacific Tea Co. v. Mayor and Commissioners of Danville,* 367 Ill. 310, 11 N.E.2d 388, 392 (1937) ("The right to engage in the liquor traffic is not an inalienable right guarded by the organic law."); *People v. McBride,* 234 Ill. 146, 84 N.E. 865 (1908) (stating that licenses to sell liquor create no vested rights and "are merely temporary permits to do what would otherwise be an offense against the law...."); *Duncan v. Marcin,* 82 Ill. App.3d 963, 38 Ill.Dec. 422, 403 N.E.2d 653, 656 (1980); *Huguley v. Marcin,* 39 Ill.App.3d 230, 349 N.E.2d 564, 566 (1976); *Malito v. Marcin,* 14 Ill.App.3d 658, 303 N.E.2d 262, 265 (1973); *Maywood Proviso*

*State Bank v. City of Oakbrook Terrace*, 67 Ill.App.2d 280, 214 N.E.2d 582, 586 (1966).

Most relevant to this court's property inquiry, however, are two cases from the Seventh Circuit that have addressed a licensee's alleged property rights under the Liquor Control Act: (1) *Philly's v. Byrne, supra;* and (2) *Reed v. Village of Shorewood*, 704 F.2d 943, 948–49 (7th Cir.1983). In each of these cases, the Seventh Circuit declined (either expressly or implicitly) to find the above section of the Liquor Control, 235 ILCS 5/6–1, controlling as to whether a liquor license is property for purposes of the Due Process Clause. Moreover, both cases largely dismiss without comment the several Illinois cases that reject the assertion that a liquor license is property.[6]

In its prior Opinion and Order, the court closely examined the Seventh Circuit's reasoning in *Philly's* and *Reed.* Though neither case is directly on point (*Philly's* is close), each provides insightful analysis that in large part, if not entirely, controls the outcome here. Additionally, the parties vigorously contest each case's application to the facts at bar. It is therefore necessary to re-examine *Philly's* and *Reed*, beginning with the earlier case, *Reed*.

### Reed v. Village of Shorewood

In *Reed*, officials of the Village of Shorewood, Illinois, employed various, questionable tactics as they attempted to strip the plaintiffs of their Illinois liquor license. *See* 704 F.2d at 947. Before the officials began implementing these tactics, the plaintiffs were able to renew their liquor license for three years. At some point, however, the village (through its officials) began a campaign of harassment against the plaintiffs, which included customer arrests and groundless allegations of liquor ordinance violations. After the limited success of those tactics, the village passed an ordinance which reduced the number of liquor licenses available and informed the plaintiffs that their liquor license would not be renewed. The Illinois Liquor Control Commission reversed and remanded, holding that the plaintiffs were entitled to a hearing before a decision was made not to renew. Unswayed, the village ignored the directive for a hearing and revoked the plaintiffs' liquor license on trumped-up charges. Again, the Illinois Liquor Control Commission reversed. Later, the village again refused to renew the plaintiffs' license without a hearing, and were again reversed. Nonetheless, the village was successful in wearing down the plaintiffs to the point where the plaintiffs eventually closed their watering-hole and surrendered their license. *See id.*

The plaintiffs then filed suit, alleging that the village and its officials "interfered with and eventually destroyed their business, in violation of the due process clause of the Fourteenth Amendment." *Id.* Of particular note was the plaintiffs' allegation that the defendants "wait[ed] for the license to expire and then refuse[d] to issue a renewal license." *Id.* at 949 (brackets in original). The district court dismissed the suit without addressing whether the plaintiffs' liquor license was property, instead holding that there was no actual deprivation by the village and its officials. *See id.*

On appeal, the Seventh Circuit discussed whether an Illinois liquor license is property for purposes of the Fourteenth Amendment. *See id.* at 948. At the outset, the court noted that since the Supreme Court's decision in *Roth*, state law provided the answer to that inquiry. *See id.* The *Reed* court, however, rejected the seemingly "inescapable" conclusion that the state law apparently on point here, *i.e.*,

---

**6.** Three additional notes: (1) the *Philly's* court refers to the line of Illinois cases only in passing, *see* 732 F.2d at 89; (2) the *Reed* court did refer to one of those cases, *City of Wyoming v. Liquor Control Commission of Illinois*, 48 Ill.App.3d 404, 6 Ill.Dec. 258, 362 N.E.2d 1080, 1084 (1977), but relied on it for a different proposition, *see* 704 F.2d at 949; (3) the Illinois Appellate Court has criticized the "liquor license as property" analysis in *Reed, see Black Knight Restaurant*, 111 Ill.Dec. 863, 513 N.E.2d at 111 ("In our view, [*Reed* ] directly contradicts controlling Illinois law, and we decline to follow it as precedent.").

the Liquor Control Act's statement that a liquor license is "purely a personal privilege ... and shall not constitute property," is controlling for due process purposes. *See Reed,* 704 F.2d at 948 (*citing* Ill.Rev. Stat.1981, ch. 43, ¶ 119).[7] Specifically, the court remarked that " '[p]roperty' in the Illinois Liquor Control Act need not mean the same thing as 'property' in the due process clause." *Id.* (*citing Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)). The court explained that while Illinois liquor licenses lack some of the typical attributes of property, *e.g.,* they cannot be sold or bequeathed, "this does not mean they are not property in a due process clause sense." *Id.* Thus, according to the court, "The statement that a liquor license is not property may have been intended just to emphasize these limitations...." *Id.*

Therefore, the *Reed* court stated that it "must look beyond labels ... and decide whether the plaintiffs' license was 'property' in the functional sense." *Id.* Accordingly, the court posed the dispositive question as "whether under Illinois law a liquor license is securably and durably the licensee's" as opposed to "what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain." *Id.*

The court answered the former query in the affirmative. *See id.* First, the court reasoned that an Illinois liquor license "is good for one year and during that time, clearly, it is securely held, for it can be revoked only for cause, after notice and hearing, and subject to judicial review." *Id.* (*citing* Ill.Rev.Stat.1981, ch. 43, ¶¶ 149, 153 [now 235 ILCS 5/7–5, 5/7–9] ). According to the court, "These are the same conditions under which a teacher's tenure, a form of property under the Fourteenth Amendment, can be revoked." *Id.* (referring to *Perry* ).

Second, the court examined the criteria for renewal of a liquor license as provided in the Liquor Control Act, Ill.Rev.Stat. 1981, ch. 43, ¶ 119 [now 235 ILCS 5/6–1]. *See* id. at 948–49. After noting that the Liquor Control Act does not provide equivalent protections for nonrenewal as revocation, the court found that the "criteria for renewal of a [liquor] license are undemanding, which suggests that the Illinois legislature expected most licenses to be renewed as a matter of course." *Id.* The court then determined that nonrenewal could be equated with revocation, meaning that the same statutory safeguards against arbitrary revocation were required for arbitrary nonrenewal. *See id.* at 949. In support thereof, the court relied on the following passage from *City of Wyoming v. Liquor Control Comm'n,* 48 Ill.App.3d 404, 6 Ill.Dec. 258, 362 N.E.2d 1080, 1084 (1977):

> [I]t could not have been the legislative intent that a liquor control commissioner be able to easily avoid the application of the statutory procedural requirements to license revocation by waiting for the license to expire and then refuse to issue a renewal license. For that reason, we interpret the term 'revocation' [in Ill. Rev.Stat.1981, ch. 43, ¶ 149, now 235 ILCS 5/7–5] to include the refusal to issue a renewal license.

*Id.* The court deemed this passage as standing for the principle "that you may not do indirectly by nonrenewal what you could not do directly by revocation." *Id.* In doing so, the court also rejected the express language in the Liquor Control Act, Ill.Rev.Stat.1981, ch. 43, ¶ 119 [now 235 ILCS 5/6–1], that provides that renewal is not a "vested right." *See id.*

As for the case before it, the court iterated the plaintiffs' allegation that the village "wait[ed] for the license to expire and then refuse[d] to issue a renewal license." *Id.* And under the court's extensive analysis, "if true this entitled [the plaintiffs] ... to all the protections, procedural and sub-

---

7. As noted above, that statement is now included in 235 ILCS 5/6–1, which was formerly cited as Ill.Rev.Stat.1981, ch. 43, ¶ 119.

The parties have not identified any material change that the provision has undergone since 1981.

stantive, of the revocation process, thus making their interest in renewal a property right for purposes of the Fourteenth Amendment." *Id.* That is the holding of *Reed.*

### Philly's v. Byrne

The court now turns to *Philly's,* a case comparable to the instant actions because it addressed the constitutionality of a precinct-wide local option referendum under the Liquor Control Act. In *Philly's,* a Chicago restaurant lost its liquor license as a result of a referendum banning the sale of alcohol throughout the entire, surrounding precinct. *See* 732 F.2d at 89. The restaurant then filed suit, alleging that "the operation of Illinois' local-option liquor law . . . allow[ing] the voters in a precinct to vote the precinct dry, deprived [them] of property without due process of law. . . ." *Id.* For reasons not reiterated in the Seventh Circuit's opinion, the district court dismissed the action on summary judgment. *See id.*

The Seventh Circuit affirmed, holding that a referendum which prohibits the sale of liquor precinct-wide does not violate due process. *See id.* at 92–93. Because the court ultimately concluded that the local option referendum satisfied the process prong of the due process inquiry, it expressly declined to decide whether a liquor license is property in these circumstances. *See id.* at 91. Before refraining from this determination, however, the court re-examined the "liquor license as property" issue. *See id.* at 90–91.

Although the court characterized *Reed* as holding that an Illinois liquor license is property within the meaning of the Fourteenth Amendment, *see id.* at 90 (*citing Reed,* 704 F.2d at 948–49), it opined that to determine whether an Illinois liquor license is property, an inquiry into "the precise dimensions of the right" is also required. *Id.* The court deemed the expiration date of the liquor license as one of these dimensions, commenting:

> Every liquor license in Illinois has a variable expiration date: either the date stamped on the license or the date on which the licensee is required to surrender the license because the precinct where the licensed premises are located has voted to go dry—whichever is earlier. Just as a tenant is not deprived of a property right when he is ejected from the premises at the expiration of his lease, so it can be argued that when a precinct votes itself dry any liquor licensees' property rights are extinguished by the terms of the licenses.

*Id.* at 90–91. The court, however, distinguished this argument from the situation where "a condition that limits a property right infringes a constitutional liberty." *Id.* at 91. An example of such a case, the court explained, would be "if . . . liquor licenses expired by their terms when the licensee criticized the Liquor Control Commission." *Id.* In that scenario, "there would be a deprivation of liberty [of expression]." *Id.* But, the court noted, "a referendum does not invade any constitutional liberty." *Id.*

While making this distinction, the court stopped short of endorsing the argument that a licensee's "property rights [could be] extinguished by the terms of the licenses." The court explained that in at least one instance such an argument would potentially allow states to circumvent due process. *See id.* The court gave the following example:

> If Illinois provided that a liquor license could be taken away only for cause but cause as determined by the Liquor Control Commission without any notice to the licensee or opportunity for a hearing, the state could argue that this was simply a condition, not unlawful in itself (for there is not a general constitutional requirement that government act only after notice and hearing), that limited the right.

*Id.* Thus, "[t]he holder of the right could complain only if the procedures of the state prescribed, however meager, were not followed." *Id.*

The court noted that this approach, while endorsed in some legal circles, "is

not yet law." *Id.* (citations omitted). Returning to the issue at bar, the court remarked, "Maybe the parallel argument that a liquor licensee's rights are merely conditional on the voters' not voting the precinct dry also fails." *Id.* And that is the end of the "property" analysis in *Philly's*, as the court declined to provide a conclusion on the "liquor license as property" issue. *See id.*

Though *Reed* and *Philly's* discuss extensively whether an Illinois liquor license is property, they do not resolve the issue conclusively. On the one hand, the answer seems clear because *Reed* holds that a licensee has a property interest under the Fourteenth Amendment in the renewal of its license. *See* 704 F.2d at 949. The Licensees argue that the holding in *Reed* is easily extended to a case where a local option referendum is at issue, and, a la *Reed*, they equate a prohibitive referendum with statutory revocation. According to the Licensees, "[t]o say ... that *Reed* only applies to the renewal right would be to read its holding and, as importantly, its reasoning, too narrowly; for it would defy common sense, let alone longstanding principles of constitutional law, that a licensee could have a property interest in the renewal of a license, but not in the underlying license itself, merely because the legislature labeled the license a privilege." (Licensees' Supp.Mem. at 12.) That argument carries weight, as later Seventh Circuit cases interpret *Reed* as holding that an Illinois liquor license is property under the Fourteenth Amendment—period. *See Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir.1993) (stating in passing that under *Reed*, "a liquor license constitutes property for purposes of the Fourteenth Amendment"); *Philly's* 732 F.2d at 90 (arguably citing *Reed* as establishing that a liquor license is always property); *see also 87 South Rothschild Liquor Mart*, 752 F.Supp. at 842 (implicit in decision declaring Liquor Control Act's single establishment provision unconstitutional on due process grounds is that Illinois liquor license is property). This would seem to end the "liquor license as property" debate.

On the other hand, the *Philly's* court arguably re-opened the debate by reiterating the instruction from *Roth* that the property inquiry also depends "on the precise dimensions of the right." *Philly's*, 732 F.2d at 90. If as the Licensees urge, *Reed* conclusively established that a liquor license was property for seemingly all purposes, then a legitimate question is why the *Philly's* court re-addressed the issue. Perhaps one obvious reason is that the facts in *Philly's* were distinguishable from those in *Reed*. And for purposes here, *Philly's*, unlike *Reed*, involved facts comparable to the ones at bar. That is, *Philly's* involved the loss of a liquor license via a local option referendum rather than the unexpected nonrenewal, and thus statutory revocation, of a license. Therefore, the court is not convinced that *Reed's* "liquor license as property" determination controls here. *See Wilcox v. Miller*, 89 C 20053, 1990 WL 304268, at *3 (N.D.Ill. Nov.6, 1990) (construing *Reed* to state that the *expectation of renewal* "creates a 'vested right' in [an Illinois liquor license]" thereby requiring due process protection).

The most relevant instruction from *Philly's* is where the court deemed a local option referendum as providing a potential expiration date for a liquor license. *See* 732 F.2d at 90–91. According to the *Philly's* court, this potential expiration date is one of "the precise dimensions of the right" accompanying the possession of a liquor license. *Id.* Although the *Philly's* court declined to reach a conclusion on these grounds, it did not outright reject the argument that a licensee's supposed property rights are conditional on the expiration date of its license. In fact, this view is supported by Judge Wood's concurring opinion in *Philly's*, in which he stated:

> While Justice Holmes' assertion in *Rippey [v. Texas*, 193 U.S. 504, 509–10, 24 S.Ct. 516, 48 L.Ed. 767 (1904)], that the power to prohibit includes the power to prohibit conditionally, has proven over-

broad in other contexts, the holding of the case remains in force in the context of a local option provision of an otherwise constitutional legislative enactment such as a prohibition on the sale of liquor under the unique aegis of the twenty-first amendment.

732 F.2d at 94.

Similarly, in a case addressing the revocation of a license to sell guns under Wisconsin law, the Seventh Circuit endorsed the argument, stating that "[a] license to operate a business is [held securely by the licensee and is] therefore property if it cannot be taken away from the holder before the end of a *definite* period without proof of misconduct on his part, so that if he keeps out of trouble he knows he can hold on to the license for that period." *Baer v. City of Wauwatosa,* 716 F.2d 1117, 1122 (7th Cir.1983) (emphasis added) (*citing Reed,* 704 F.2d at 948–49) (other citations omitted). The *Baer* court stated further that the plaintiff's right to sell guns "was conferred by the license, and if [the plaintiff] had no expectation reasonably grounded in law that he would be able to retain the license for a *fixed term* during good behavior, he was not deprived of property." *Id.* (emphasis added); *see also National Paint & Coatings Assoc. v. City of Chicago,* 45 F.3d 1124, 1129 (7th Cir. 1995) ("[T]he people, directly or through their legislature, may alter the substantive terms of the promise not to interfere in private economic transactions.") (*citing Philly's* ); *Doe v. Edgar,* 721 F.2d 619, 624 (7th Cir.1983) (Once an "individual loses his [driver's] pursuant to a valid conviction and he exhausts his administrative remedies, his property interest in that license terminates.").

The court finds the property analysis from *Baer* dispositive here. Via the local option provision of the Liquor Control Act, the term of a liquor license is indefinite, thereby indicating that a licensee's interest is "meager, transitory, or uncertain." In other words, the ever-present possibility of an Illinois liquor license expiring on an indefinite date (despite the one-year term otherwise provided) via a local option ref-

erendum indicates that it is not "securably and durably the licensee's"—the standard articulated in *Reed.* Indeed, while the Licensees, like the plaintiffs in *Reed,* had a legitimate expectation via the Liquor Control Act that their licenses would be renewed administratively as a matter of course, they were also on notice under the statute that their licenses may expire by the discretion of the electorate (the statute uses the term "void"). This notice of potential expiration by referendum therefore negates any "legitimate claim of entitlement" that a licensee would assert in its license. *See Border v. City of Crystal Lake,* 75 F.3d 270, 273 (7th Cir.1996) ("A person's interest in a benefit ... constitutes 'property' for due process purposes only if 'there is are such rules or mutually explicit understandings that support his claim of entitlement to the benefit.' ") (*quoting Perry,* 408 U.S. at 601, 92 S.Ct. 2694); *National Paint,* 45 F.3d at 1129 ("A license is nothing but a promise by the issuing body not to interfere in business according to its terms"); *cf. Ross v. City of Chicago,* 89 C 8049, 1990 WL 37700 (N.D.Ill.Mar. 22, 1990) (no unconstitutional taking where local option referendum voided liquor license because the plaintiff "operated his liquor store with the knowledge that a local referendum could take away his liquor license at any time."); *People v. McBride,* 234 Ill. 146, 84 N.E. 865, 872 (1908) (license not property where license "stated on its face that it was subject to all the laws of the state."); *M & F Supermarket, Inc. v. Owens,* 997 F.Supp. 908, 913 (S.D.Ohio 1997) (local option referendum did not violate plaintiff's substantive due process rights because plaintiff's "knew or should have known that the citizens had this option under the laws of the State of Ohio."); *Scioto Trails Co. v. Ohio Dept. of Liquor Control,* 11 Ohio App.3d 75, 462 N.E.2d 1386, 1388–92 (1983) (no due process violation where licensee held liquor license subject to the exercise of the statutory right of a local option election).

The Licensees nevertheless argue that they had a legitimate expectation in the

continued validity of their licenses because the history of the Liquor Control Act, going back to its original enactment in 1934 and including its review in *Philly's* and *87 South Rothschild Liquor Mart*, "makes clear the fact that licensees have, and had, an equal right to expect that any "dry" vote would only be precinct-wide...." (Licensees' Supp.Mem. at 16.) (*citing Philly's*, 732 F.2d at 92–93 and *87 South Rothschild Liquor Mart*, 752 F.Supp. at 842). Thus, according to the Licensees, their "true expectation ... is that any threat of a local option referendum would solely be across the board, thus furnishing them with a permissible substitute safeguard against an unconstitutional taking." *Id.* This expectation, however, does not derive from the language of the Liquor Control Act, and is therefore nothing more than a unilateral expectation of entitlement. *See Cornelius v. LaCroix*, 838 F.2d 207, 211 (7th Cir.1988) (rejecting argument that legitimate claim of entitlement arose from past contracts); *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir.1987) ("A person has a 'property interest' in an expectation of renewal only if state law so provides."). And as noted above, neither *Philly's* nor *87 South Rothschild Liquor Mart* conclusively establishes that a licensee has a property interest in its license. Moreover, the Licensee's attempt to distinguish a precinct-wide referendum from a single-address referendum (for purposes of the property inquiry) is not persuasive.[8]

■ In sum, a unilateral claim of entitlement, as the Licensees have here, sim-

ply does not suffice for purposes of establishing that they have a property interest in the continued validity of their liquor licenses. *See Roth*, 408 U.S. at 576–77, 92 S.Ct. 2701; *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 165 (7th Cir. 1994); *Wallace v. Robinson*, 940 F.2d 243, 246 (7th Cir.1991); *Dziewior v. City of Marengo*, 715 F.Supp. 1416, 1418 (N.D.Ill. 1989); *cf. Marusic Liquors, Inc. v. Daley*, 55 F.3d 258, 262 (7th Cir.1995) (plaintiff misunderstood the nature of a license in a system of regulation where he depicted it "as a kind of property that the state must respect and the privileges of which it may not change."). Because the Licensees have failed to show that they have a property interest in their liquor licenses, their due process claim must fail. Therefore, the court concludes that the local option provision of the Liquor Control Act does not violate the Due Process Clause of the Fourteenth Amendment.[9]

## C. Bill of Attainder

Next, the court addresses the Licensees' claim that the local option provision allowing single-address referenda under the Liquor Control Act, 235 ILCS 5/9–2, amounts to a bill of attainder in violation of the U.S. Constitution

■ The Constitution provides that "[n]o State shall ... pass any Bill of Attainder." *See* U.S. Const. Art. I, § 10, cl. 1; *see also* U.S. Const. Art. I, § 9, cl. 3 (applied to the federal government). "The Supreme Court has defined a bill of attain-

---

**8.** Additionally, the Licensees (notwithstanding that N & N and Club Misty are corporations) have not shown that the "continued possession [of their liquor licenses is] essential in the pursuit of a livelihood." *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Scott*, 786 F.2d at 341; *cf. Nat'l Paint & Coatings*, 45 F.3d at 1129–30 (discussing substantive due process). The *Bell* court stated that "[i]n such cases ... licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Id. But cf. Hawkins v. Agric. Marketing Service*, 10 F.3d 1125, 1133 (5th Cir.1993) ("The Constitution does not guaran-

tee an unrestricted privilege to engage in a particular profession or a privilege to conduct a business as one pleases.").

**9.** For excellent discussions on whether a liquor license is entitled to constitutional protection as a property interest, see Shelly Ross Saxer, *License to Sell: Constitutional Protection Against State or Local Government Regulation of Liquor Licensing*, 22 Hastings Const. L.Q. 441 (Winter 1995) and Linda L. Munden, *Retail Liquor Licenses and Due Process: The Creation of Property Through Regulation*, 32 Emory L.J. 1199 (Fall 1983).

der as 'a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.'" *Dehainaut v. Pena,* 32 F.3d 1066, 1070 (7th Cir.1994) (*quoting Selective Ser. Sys. v. Minn. Public Int. Research,* 468 U.S. 841, 847, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984)); *see also Nixon v. Administrator of Gen. Services,* 433 U.S. 425, 468, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); *United States v. Brown,* 381 U.S. 437, 445, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965); *United States v. Lovett,* 328 U.S. 303, 315–16, 106 Ct.Cl. 856, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946). Likewise, "[t]he singling out of an individual for legislatively prescribed punishment constitutes an attainder whether the individual is called by name or described in terms of conduct which, because it is past conduct, operates only as a designation of particular persons." *Communist Party of the United States v. Subversive Activities Control Bd.,* 367 U.S. 1, 86, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961). However, the prohibition against bills of attainder "surely was not intended to serve as a variant of the equal protection doctrine, invalidating every Act of Congress or the States that legislatively burdens some persons or groups but not other plausible individuals." *Nixon,* 433 U.S. at 477; *see also Falls v. Town of Dyer, Ind.,* 875 F.2d 146, 148 (7th Cir.1989) ("Our Constitution requires neither perfection nor comprehensive regulation."); *Song v. City of Elyria, Ohio,* 985 F.2d 840, 844 (6th Cir.1993); *cf. River Park, Inc.,* 23 F.3d at 167 ("Federal litigation is not a *repêhcage* round for losers of earlier contests....").

■ The Licensees bear a heavy burden in seeking to have the Liquor Control Act declared a bill of attainder, as " 'only clearest proof suffices to establish unconstitutionality of a statute on such a ground.'" *Communist Party of the United States,* 367 U.S. at 83, 81 S.Ct. 1357 (*quoting Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)); *see also Kerr–McGee Chemical Corp. v. Edgar,* 837 F.Supp. 927, 935 (N.D.Ill.1993). To carry their burden, the

Licensees must show that the Liquor Control Act has three attributes: "(1) specification of the affected persons; (2) punishment; and (3) lack of a judicial trial." *Dehainaut,* 32 F.3d at 1070. Because the "lack of a judicial trial" element is not at issue, the court limits its discussion to the remaining two elements, "specification of the affected persons" and "punishment."

With respect to the specificity element, the Licensees argue that "[t]he referendum that appears on the ballot specifies a particular licensed establishment which alone is affected by the vote to revoke its license." (Licensees' Supp.Mem. at 37.) Thus, the Licensees attack the Liquor Control Act at the referendum level rather than the terms of the statute itself. *Compare City of Eastlake v. Forest City of Enterprises, Inc.,* 426 U.S. 668, 672–79, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976) (rejecting a due process challenge to a zoning referendum) *with Citizens Against Rent Control v. City of Berkeley,* 454 U.S. 290, 295, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981) ("It is irrelevant that the voters rather than a legislative body [adopted the measure], because voters may no more violate the Constitution by enacting a ballot measure than a legislative body may do so by enacting legislation."). Though the Licensees' argument carries weight, the contravening argument is that where a statute is attacked as a bill of attainder, the focus is on its terms, and whether *those* terms either explicitly or as applied specify (and punish) an individual or group. *Cf. Pro-Eco, Inc. v. Bd. of Comm. of Jay County, Ind.,* 57 F.3d 505, 513 n. 9 (7th Cir.1995) ("If an ordinance professed general applicability, but it were so specific in describing the prohibited acts that only one actor could ever come within its purview, the ordinance might amount to a bill of attainder...."); *Coniston Corp. v. Village of Hoffman Estates,* 844 F.2d 461, 469 (7th Cir.1988). *But cf. Philly's,* 732 F.2d at 93; *United Beverage Co. of South Bend, Inc.,* 760 F.2d at 159.

Assuming that the proper focus is on the actual terms of the enabling statute, the Liquor Control Act lacks such specificity. Although the Liquor Control Act provides for single-address referenda, its terms do not identify any particular licensee by name or otherwise. Put simply, the single-address provision applies generally to all current and potential liquor licensees in the City of Chicago. *Contrast Brown,* 381 U.S. at 450, 85 S.Ct. 1707 (federal statute limiting eligibility for union office "designated in no uncertain terms" the characteristics of communists). Indeed, the city-wide addresses of the Licensees reflect the general application of the statute. Moreover, the only common characteristic that the Licensees have shown is that each holds a liquor license. Finally, their mere number also weighs against finding an unconstitutional "class of one." *See Coniston Corp.,* 844 F.2d at 469 (stating that "where the class has only one member, we have the bill of attainder."). In any event, the court's bill of attainder analysis does not rest on whether the "specificity" element has been satisfied.

Even if the focus were on particular referenda and the Licensees demonstrated "specificity," they nevertheless fail to show that the Liquor Control Act, via its provision for single address referenda, is punitive. To determine whether a statute inflicts punishment, the court must make three inquiries: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record 'evinces a [legislative] intent to punish.'" *Selective Serv. Sys. v. Minn. Public Int. Research,* 468 U.S. at 852, 104 S.Ct. 3348 (*quoting Nixon,* 433 U.S. at 475–76, 478, 97 S.Ct. 2777); *see also Dehainaut,* 32 F.3d at 1071.

From a historical perspective, the single-address provision of the Liquor Control Act does not fall within the meaning of punishment. In this country, the punishments forbidden by the Bill of Attainder Clause have expanded beyond the prohibition's English origin, namely death sentences, "to include legislative bars to participation by individuals or groups in specific employments or professions." *Selective Serv. Sys.,* 468 U.S. at 852, 104 S.Ct. 3348; *see also Nixon,* 433 U.S. at 473–74, 97 S.Ct. 2777. In conclusory fashion, the Licensees contend that the loss of their licenses falls within this ambit of punishment. (*See* Licensees' Supp.Mem. at 34–35) ("There is no doubt, then, that the legislative revocation of a specific individual's license qualifies as the kind of punitive measure governed by the Bill of Attainder Clause."). As the brevity of the Licensees' argument implies, there is simply no basis to deem the loss of a liquor license as punishment in the historical sense. Further, the Licensees do not attempt to show that the loss of their licenses bars them from participation in specific employment; nor do they attempt to compare their predicament with instances where punishment was found. *See, e.g., Nixon,* 433 U.S. at 474–75, 97 S.Ct. 2777 (citing cases). In short, "[f]orbidden punishment is not involved merely because [a statute] imposes burdensome consequences." *Id.* at 472, 97 S.Ct. 2777.

Moreover, the court finds that the single-address provision of the Liquor Control Act furthers a nonpunitive legislative purpose. As discussed at the outset of the court's analysis, states have an important interest, and wide latitude in exercising their police powers to control the sale of liquor. That interest is evident in the plain language of the Liquor Control Act, which states:

This Act shall be liberally construed, to the end that the health, safety and welfare of the People of the State of Illinois shall be protected and temperance in the consumption of alcoholic liquors shall be fostered and promoted by sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors.

235 ILCS 5/1–2; *cf. Kerr–McGee Chem. Corp.*, 837 F.Supp. at 936 (referring to the purpose of the statute at issue). And that legitimate interest is most apparent when the electorate votes in a referendum on whether to prohibit the sale of alcohol. *See Philly's*, 732 F.2d at 92 ("It has seemed best in default of consensus to leave the matter [of alcohol sales] to local preference as expressed in the voting booth."). Simply put, the "the restriction [on the Licensees] comes about as a relevant incident to [the] regulation" of alcohol. *Dehainaut*, 32 F.3d at 1071 (citation and internal quotation marks omitted).

The court's final inquiry into whether the challenged enactment inflicts punishment is "whether the legislative . . . record as a whole evinces an intent to punish." *Dehainaut*, 32 F.3d at 1072. The Licensees must present " 'unmistakable evidence of punitive intent' before an enactment may be invalidated on this basis." *Id.* (citations omitted). Thus, even "several isolated statements" by legislators will not suffice. *Id.*

On this prong, the Licensees' evidence consists of one such isolated statement. To wit, a legislator commented that single-address referenda "will not penalize the good licenses . . . but only target that bad operator." (Licensees' Supp.Mem. at 37.) That statement, however, does not refer to a specific licensee. And in any event, the court declines to infer punitive intent in the absence of additional evidence. Finally, the court rejects the Licensees' argument that statements in the legislative history directed at the anti-social consequences of alcohol consumption are probative of punitive intent; such statements instead reflect the purpose of the legislation.

In sum, the Licensees have failed to show that the single-address provision of the Liquor Control Act constitutes punishment. Therefore, the court concludes that the Liquor Control Act is not a bill of attainder in violation of the United States Constitution.

## III. CONCLUSION

For the foregoing reasons, the court concludes that the Licensees have failed to show that the Liquor Control Act violates the Due Process Clause or the Bill of Attainder Clause of the United States Constitution. The court declines to exercise supplemental jurisdiction over the Licensees' claim that the Liquor Control Act violates the Special Legislation Clause of the 1970 Illinois Constitution.

IT IS SO ORDERED.